1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  PAMELA T. JOHANN (CABN 145558)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36045
5       San Francisco, California 94102
        Telephone: (415) 436-7025
6       Facsimile: (415) 436-7234
        pamela.johann@usdoj.gov
7
   Attorneys for Defendant UNITED STATES
8  DEPARTMENT OF LABOR

9

10                      UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14  THE CENTER FOR INVESTIGATIVE          )  Case No. 19-cv-05603-SK
    REPORTING and WILL EVANS,             )
15                                        )  **DEFENDANT'S MOTION FOR SUMMARY**
            Plaintiffs,                   )  **JUDGMENT**
16                                        )
        v.                                )  Date:   May 18, 2020
17                                        )  Time:   1:30 p.m.
    UNITED STATES DEPARTMENT OF           )  Place:  Courtroom C, 15th Floor
18  LABOR,                                )
                                          )
19          Defendant.                    )  The Hon. Sallie Kim
                                          )
20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 19-cv-05603-SK

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...................................................................................... iii

STATEMENT OF RELIEF REQUESTED.................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      INTRODUCTION ................................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

III.    STATEMENT OF FACTS ...................................................................................................1

        A.     OSHA's Recordkeeping And Investigatory Functions ...........................................1

        B.     Procedural History ...................................................................................................2

               1.      Plaintiffs' FOIA Requests .............................................................................2

               2.      Initial Searches .............................................................................................3

               3.      Initial Responses and Plaintiffs' FOIA Lawsuit..........................................4

               4.      Subsequent Releases .....................................................................................4

IV.     LEGAL STANDARDS .......................................................................................................5

        A.     Summary Judgment Standard ..................................................................................5

        B.     FOIA ........................................................................................................................5

        C.     Exemption 4 .............................................................................................................6

V.      ARGUMENT .......................................................................................................................9

        A.     DOL Conducted A Reasonable Search Of Its Records............................................9

        B.     Confidential Commerical Information Contained In The Requested Form 300A
               Records Were Properly Withheld Under Exemption 4..........................................10

               1.      The Information Is Commercial or Financial Information............................10

               2.      The Information Was Obtained From a Person .............................................15

               3.      The Information Is Confidential Under The *Argus Leader* Standard. ........15

                      (i)     The Form 300As And Workplace Injury Rate Information And Is
                              Customarily And Actually Treated As Private By Amazon. ............16

                      (ii)    The Limited Required Disclosure of Form 300A Data To
                              Employees Does Not Defeat Exemption 4 Protection. ....................17

                      (iii)   The Privately Held Information Did Not Lose Its Confidential
                              Nature Upon Submission To The Government In The
                              Circumstances Of This Case.............................................................20

(a)     The Second *Argus Leader* Condition Is Not Applicable Here. ....................20

(b)     The Information Was "Provided to the Government Under An
Assurance of Privacy" ...................................................................................22

C.     DOL Properly Asserted Exemption 7(C) To Protect The Privacy Of Third Parties...............23

D.     DOL Properly Complied With Its Obligation To Provide "Reasonably
Segregable" Information. .........................................................................................................23

E.     DOL's Assertion Of Exemption 4 Satisfies The FOIA Improvement Act. ...........................24

VI.     CONCLUSION ........................................................................................................................25

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 18, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom C, located on the 15th Floor of the United States Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Sallie Kim, Federal Defendant the United States Department of Labor ("Defendant" or "DOL"), by and though its attorneys, will and hereby do move, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in its favor in this action brought pursuant to the Freedom of Information Act ("FOIA").  This motion is made on the grounds that DOL has satisfied all of its obligations with respect to Plaintiffs' FOIA requests and that the information at issue were properly withheld pursuant to FOIA Exemption 4, 5 U.S.C. § 552(b)(4) and Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).  Defendant's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Marc Choi, Francis Meilinger, Raymond Mitten, Heather MacDougall, and Pamela Johann and exhibits thereto, the Court's files and records in this matter and other matters of which the Court takes judicial notice, and any oral argument that may be presented to the Court.

### STATEMENT OF RELIEF REQUESTED

DOL requests that the Court grant summary judgment in favor of Defendant.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Freedom of Information Act ("FOIA") case involves a request by Plaintiffs for confidential workplace injury reports submitted to the Occupational Safety and Health Administration ("OSHA") by Amazon.com Services LLC ("Amazon") as part of OSHA's inspections of Amazon facilities in Ohio and Illinois.  The information falls within the broad category of documents covered by FOIA's Exemption 4, as recently re-defined by the United States Supreme Court in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ("*Argus Leader*").  *Argus Leader* dispensed with the existing Exemption 4 standard that engrafted additional requirements onto the statutory language, in favor of a simple and straightforward test of confidentiality under the ordinary and common meaning of that term.  The Supreme Court's test focuses on how the *owner* of the information treats it.  The declaration of Amazon's Vice President of Workplace Health & Safety demonstrates unequivocally that Amazon treats these records as confidential and does not disclose them to the public.  Under *Argus Leader*, this information is properly shielded from disclosure under Exemption 4.  The Supreme Court reaffirmed in that case that FOIA's "'exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.'"  139 S. Ct. at 2366 (citation omitted; alterations in original).  Defendant respectfully requests that the Court grant summary judgment in favor of Defendant.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.        Did the Government properly redact material under FOIA Exemptions 4 and 7?

## III.   STATEMENT OF FACTS

### A.   OSHA's Recordkeeping And Investigatory Functions

The records requested in the three FOIA requests underlying this litigation relate to documents collected by OSHA in connection with its investigations at separate Amazon fulfillment centers in Ohio, Illinois, and Massachusetts.  OSHA, an agency component of DOL, is entrusted with ensuring safe and healthful working conditions for working people by setting and enforcing standards and by providing training, outreach, education and assistance.  OSHA was created by Congress to ensure the safety and health of workers by, among other things, promulgating and enforcing occupational safety and health standards ("OSHA standards"), as well as recordkeeping regulations "requiring employers to maintain accurate records

1    of, and to make periodic reports on, work-related deaths, injuries and illnesses." 29 U.S.C. §§ 655, 657.

2    OSHA's responsibilities, as outlined in the Occupational Safety and Health ("OSH") Act of 1970,

3    include workplace inspections and investigations.  *See* 29 U.S.C. § 651 *et seq.*  Inspections and

4    investigations performed by OSHA include those initiated by receipt of a safety and health complaint from

5    an employee or employee representative. *See* Declaration of Marc Choi ("Choi Decl.") ¶ 14.  When a

6    safety and health complaint is received, it is processed according to OSHA's procedures as outlined in

7    OSHA's Field Operations Manual ("FOM").  *Id.* ¶ 15.  In some instances, a Compliance Safety and Health

8    Officer ("CSHO") is assigned to investigate the complaint through an inspection of the pertinent employer

9    or establishment.  *Id.*  During the safety and health complaint inspection process, the CSHO may request

10   documents from the employer, which may include individual OSHA Form 300A "Summary of Work-

11   Related Injuries and Illnesses" records for the relevant establishment(s).  *Id.* ¶ 16.  OSHA is required by its

12   FOM to maintain the confidentiality of submitted material.  *Id.* ¶¶ 17-18.

13   OSHA Form 300A is a summary log of work-related injuries and illnesses that must be completed

14   by certain establishments, including Amazon LLC ("Amazon").  This form contains data regarding total

15   hours worked, total number of employees, total number and rate of work-related injuries and illnesses by

16   type, and total number of employee days missed due to these injuries.  *Id.* ¶ 12; MacDougall Decl. ¶ 7.

17   All of this information must be provided separately for each facility.  Choi Decl. ¶ 12.  Employers are

18   required by OSHA's Recordkeeping Regulation, 29 C.F.R. Pt. 1904, to complete and maintain OSHA

19   Form 300A forms, and to provide them, upon request, to OSHA Compliance Safety and Health Officers

20   conducting OSHA inspections.  *Id.* ¶ 13.  If obtained during an inspection, these forms are maintained in

21   the individual inspection file.  *Id.* ¶ 16.

22   **B.    Procedural History**

23   **1.    Plaintiffs' FOIA Requests**

24   Plaintiffs Will Evans and The Center for Investigative Reporting ("CIR" or "Plaintiffs")

25   submitted three separate FOIA requests giving rise to this lawsuit.  The first request, FOIA Request

26   Number 877092 ("First FOIA Request"), submitted on April 22, 2019, sought "[t]he entire investigative

27   file for Inspection 1292524.015 (including citation, appeal correspondence, settlement correspondence,

28

safety narrative, all inspection notes, witness interviews, photos and video if applicable)."[1]  The second request, FOIA Request Number 878010 ("Second FOIA Request"), submitted on May 13, 2019, sought "[a]ll 300A forms provided by Amazon as part of Inspections 1377288.015, 1371360.015, and 1367521.015."  Choi Decl. ¶ 4.  This request relates to three OSHA inspections of Amazon facilities in Ohio.  *Id.*  The third request, FOIA Request Number 878011 ("Third FOIA Request"), submitted May 15, 2019, sought "[a]ll 300A forms provided by Amazon as part of these Illinois OSHA inspections: 1371705.015, 1344215.015, 1343890.015, 1327615.015, 1301593.015."  *Id.* ¶ 8.  This requests relates to five OSHA inspections of Amazon facilities in Illinois.  *Id.*  The records requested in the Second and Third FOIA Requests ("Form 300A FOIA Requests") are OSHA Form 300A records obtained during inspections at specific Amazon fulfillment centers.

### 2.    Initial Searches

Only DOL's responses to Plaintiff's Form 300A FOIA Requests remain in dispute in this litigation.  Dkt. No. 24 ¶ 2.  At the time the Form 300A FOIA Requests were processed, OSHA's FOIA processing operated in a decentralized manner, such that each FOIA request was assigned to and processed by the individual area office[2] in which the pertinent inspection had occurred.  *Id.* ¶¶ 19-20.  The Second FOIA Request was assigned to the Cleveland and Columbus OSHA Area Offices for processing.  *Id.* ¶ 21.  The Third FOIA Request should have been assigned to three different Illinois Area Offices, *id.* ¶ 22, but due to an administrative error, two of the assignments were not made.  *Id.*  The FOIA Coordinators in the three area offices that received the assignments performed searches for records by reviewing the relevant individual inspection file(s) in order to locate any OSHA Form 300A records.  *Id.* ¶ 23.  Because of the erroneous failure to assign the requests to the two other Illinois area offices, searches for records were not performed

---

[1] The First FOIA Request is no longer at issue in this litigation.  DOL initially withheld witness statements in their entirety under Exemptions 7(C) and 7(D) in response to the First FOIA Request.  *See* Dkt. No. 1 ¶¶ 42-55.  In an effort to resolve this dispute between the parties, DOL reevaluated the witness statements and its assertion of Exemption 7.  *See* Dkt. No. 24 ¶ 1.  As a result of this process, DOL released additional information to Plaintiffs.  *Id.*  Following this release, Plaintiffs determined that it was no longer challenging DOL's response to its First FOIA request, and the parties submitted a stipulation to the Court to that effect.  *Id.*

[2] Each state is divided into several area offices, each of which is responsible for covering a portion of the state.  Ohio has four area offices: Cincinnati, Columbus, Cleveland, and Toledo.  Illinois has five area offices: Chicago North, Chicago South, Fairview Heights, Naperville, and Peoria.  For additional information, please refer to OSHA's "OSHA Offices by State" page, https://www.osha.gov/contactus/bystate.

1   for two of the five Illinois inspections prior to the initial response to Plaintiffs.  *Id.*

2              **3.      Initial Responses and Plaintiffs' FOIA Lawsuit**

3          The original search for Form 300A records responsive to the Second FOIA Request (Ohio)

4   produced a total of two Form 300A records.  Choi Decl. ¶ 24.  The original search for Form 300A records

5   responsive to the Third FOIA Request (Illinois) produced one Form 300A record.  *Id.*  The responsive

6   records were produced to Plaintiffs, with redactions, by the Cleveland OSHA Area Office on May 22,

7   2019, and the Chicago South OSHA Area Office on June 5, 2019.  *Id.* ¶ 25.  Plaintiffs appealed the

8   agency's decision to redact these records. Declaration of Raymond E. Mitten (Mitten Decl.) ¶¶ 12-17.  No

9   further action was taken at the administrative level in either appeal before this lawsuit was filed due to the

10  large backlog of FOIA appeals.  *Id.* ¶ 6.  Plaintiffs filed their Complaint in this action on September 5,

11  2019.  ECF No. 1.

12             **4.      Subsequent Releases**

13         Shortly after DOL's initial responses to Plaintiffs' FOIA requests, the Supreme Court decided

14  *Argus Leader*, 139 S. Ct. 2356, changing the test for confidentiality under Exemption 4.  Following that

15  decision, DOL determined that it needed to follow its pre-disclosure notification policy with respect to

16  Plaintiffs' FOIA requests because the Form 300A material at issue would be protected by Exemption 4

17  under the Supreme Court's new standard if the Amazon treated the information as confidential.  Choi

18  Decl. ¶¶ 27-29; Declaration of Francis Meilinger ("Meilinger Decl.") ¶¶ 7-8.  Under that policy, OSHA

19  issued notification letter to Amazon representations, notifying them that a FOIA request had been made for

20  inspection files containing records that originated from Amazon, and which may be subject to Exemption

21  4 of FOIA.  Choi Decl. ¶ 32. In response, Amazon stated that it treats OSHA Form 300A as private and

22  detailed its handling of Form 300A records as confidential records.  *Id.* ¶ 33.  Based on Amazon's

23  responses, OSHA determined that portions of the information contained on the OSHA Form 300A records

24  were exempt under Exemption 4 and could not be disclosed.  *Id.* ¶ 34.

25         Following this pre-disclosure notification process, OSHA instituted a thorough second search for

26  records responsive to both 300A FOIA requests.  Choi Decl. ¶ 35.  OSHA determined at that time that

27  assignments erroneously had not been made to area offices in or near Chicago for two of the Illinois

28  inspections.  A member of the Region 5 centralized FOIA processing team contacted each of the FOIA

1    Coordinators in area offices in which the listed inspections had occurred, and each area office FOIA

2    Coordinator then searched for responsive records by reviewing or re-reviewing the pertinent individual

3    inspection files.  *Id.*  The FOIA Coordinators in the five relevant area offices, Cleveland, Columbus, Chicago

4    North, Chicago South, and Naperville, provided any Form 300A records they located.  *Id.*  Through this

5    search and review, OSHA determined that it had not located all responsive records during the initial FOIA

6    processing.  *Id.*  OSHA's second search identified five additional Form 300A records that had not been

7    previously released.  Choi Decl. ¶ 37.   These five records, and the four 300A records that had previously

8    been released, were reprocessed.  *Id.*  OSHA redacted the confidential information from these records under

9    Exemption 4 and released all nine Form 300A records to Plaintiffs on March 3, 2020.  *Id.*

10   **IV.    LEGAL STANDARDS**

11         **A.    Summary Judgment Standard**

12         Summary judgment is appropriate if the record shows "that there is no genuine issue as to any

13   material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty*

14   *Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c).  A court must enter summary judgment

15   "against a party who fails to make a showing sufficient to establish the existence of an element essential

16   to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v.*

17   *Catrett*, 477 U.S. 317, 322 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on

18   which a reasonable fact finder could find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  A

19   dispute is material only if it could affect the outcome of the suit.  *See Rivera v. Phillip Morris, Inc.*, 395

20   F.3d 1142, 1146 (9th Cir. 2005).  The mere existence of some alleged factual dispute between the parties

21   will not defeat an otherwise properly supported motion for summary judgment.  *See Anderson*, 477 U.S.

22   at 248.  Summary judgment is appropriate if a rational trier of fact, viewing the record as a whole, could

23   not find in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*

24   *Corp.*, 475 U.S. 574, 586 (1986).

25         **B.    FOIA**

26          "FOIA cases are typically decided on motions for summary judgment."  *Defenders of Wildlife v.*

27   *U.S. Border Patrol*, 623 F.Supp.2d 83, 87 (D.D.C. 2009); *see also Kaminsky v. Nat'l Aeronautics & Space*

28   *Admin.*, No. 08-cv-3313 (ARR), 2010 WL 276184, at *5 (E.D.N.Y. Jan. 19, 2010) ("Summary judgment

1   is the preferred procedure for resolving FOIA disputes.").  The Court will grant summary judgment to the

2   Government in a FOIA case if the agency can prove "that it has fully discharged its obligations under the

3   FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most

4   favorable to the FOIA requester."  *James Madison Project v. Dep't of Justice*, No. 16-cv-116 (RBW),

5   2018 WL 1472492, at *2 (D.D.C. Mar. 26, 2018) (quoting *Friends of Blackwater v. U.S. Dep't of Interior*,

6   391 F.Supp.2d 115, 119 (D.D.C. 2005)).

7        In a FOIA case, while the agency invoking an exemption in order to withhold requested records

8   "bears the burden of demonstrating that the exemption properly applies to the documents," *Lahr v. NTSB*,

9   569 F.3d 964, 973 (9th Cir. 2009), the agency meets its burden when it submits declarations that "contain

10  reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption."

11  *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quoting *Lewis v. Internal Revenue*

12  *Serv.*, 823 F.2d 375, 378 (9th Cir. 1987)).  Declarations submitted by an agency to demonstrate the adequacy

13  of its FOIA response are entitled to a presumption of good faith.  *See, e.g.*, *Hamdan v. U.S. Dep't of Justice*,

14  797 F.3d 759, 772 (9th Cir. 2015).  Where declarations give reasonably detailed justifications for

15  withholding and appear to be in good faith, "the inquiry ends and the nondisclosure is upheld."  *Id.* at 773

16  (citing *Hunt v. C.I.A.*, 981 F.2d 1116, 1119 (9th Cir. 1992)).

17       FOIA cases are decided using a *de novo* review standard.  *See* 5 U.S.C. § 552(a)(4)(B); *see also U.S.*

18  *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989).  Because the district

19  court decides *de novo* whether the agency has sustained its burden, an agency is not barred from invoking an

20  exemption in litigation merely because that exemption was not cited in responding to the request at the

21  administrative level.  *See, e.g., Young v. C.I.A.*, 972 F.2d 536, 538-39 (4th Cir. 1992) ("[A]n agency does not

22  waive FOIA exemptions by not raising them during the administrative process.").

23  **C.    Exemption 4**

24       The "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a

25  democratic society, needed to check against corruption and to hold the governors accountable to the

26  governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The Supreme Court has

27  recognized that "Congress sought to reach a workable balance between the right of the public to know and

28  the need of the Government" to protect certain information.  *John Doe Agency v. John Doe Corp.*, 493

1  U.S. 146, 152 (1989).  If the information sought by a requester falls within one or more of the nine FOIA

2  exemptions, it is protected under the statute from being disclosed to the public.  5 U.S.C. § 552(b).  "FOIA

3  expressly recognizes that important interests are served by its exemptions, and those exemptions are as

4  much a part of FOIA's purposes and policies as the statute's disclosure requirement."  *Argus Leader*, 139

5  S. Ct. at 2366 (internal citations, quotation marks and brackets omitted).

6       At issue in this case is Exemption 4, 5 U.S.C. § 552(b)(4).  "Exemption 4 shields from mandatory

7  disclosure 'commercial or financial information obtained from a person and privileged or

8  confidential.'"  *Argus Leader*, 139 S. Ct. at 2362 (quoting 5 U.S.C. § 552(b)(4)).   Exemption 4 "was

9  designed to protect confidential information" where it "would customarily not be released to the public by

10 the person from whom it was obtained."  *Forsham v. Harris*, 445 U.S. 169, 184-85 (1980).

11      Prior to the Supreme Court's decision in *Argus Leader*, the Ninth Circuit followed the "substantial

12 competitive harm" requirement articulated by the D.C. Circuit in *National Parks & Conservation Ass'n v.*

13 *Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974) ("*National Parks*").  Under this test, commercial information

14 was considered "confidential," and thus exempt from disclosure, if disclosure was likely to "cause

15 substantial harm to the competitive position of the person from whom the information was obtained."

16 *Lion Raisins, Inc. v. U.S. Dep't of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004) (quoting *G.C. Micro*

17 *Corp. v. Defense Logistics Agency*, 33 F.3d 1109, 1112-13 (9th Cir. 1994)).

18      The Supreme Court in *Argus Leader* expressly rejected the "so-called 'competitive harm' test"

19 that had been "engrafted onto Exemption 4," concluding that it finds no support in "dictionary

20 definitions, early case law, or any other usual source that might shed light on the statute's ordinary

21 meaning."  139 S. Ct. at 2360.  Dismissing this standard as a "a relic from a bygone era of statutory

22 construction," the Court held that the competitive harm test was "inconsistent with the terms of the

23 [FOIA]," *id.*, and was the result of a "casual disregard of the rules of statutory interpretation" and

24 "selective tour through the legislative history" by the D.C. Circuit in *National Parks*, which a number of

25 courts of appeals eventually adopted "[w]ithout much independent analysis."  *Id.* at 2364 (citing

26 *National Parks*, 498 F.2d at 767.  The Supreme Court concluded that the dissent's argument that "it

27 would be a good idea to require a showing of *some* harm" finds no support in the statutory text, and

28 instead "boils down to a policy argument about the benefits of broad disclosure."  *Id.* at 2366 (emphasis

1   in original).  Because Congress already made this policy determination when it enacted FOIA and

2   sought a "workable balance" between disclosure and privacy, *id.*, it was not for the courts to reconsider.

3   The Court emphasized that exemptions that seek to protect this privacy, including Exemption 4, "are as

4   much a part of FOIA's purposes and policies as the statute's disclosure requirement."  *Id.*

5          The *Argus Leader* Court stated that the term "confidential" should instead be interpreted consistent

6   with the term's ordinary meaning as of the time the statute was enacted.  139 S. Ct. at 2362, 2364 (quotation

7   marks omitted). When Congress enacted FOIA in 1966, the Court noted, "[t]he term 'confidential' meant

8   then, as it does now, 'private' or 'secret.'"  *Id.* at 2363 (quoting Webster's Seventh New Collegiate

9   Dictionary 174 (1963)).  The Court explained that under contemporary definitions, two conditions might be

10  required for information that is communicated to another to be considered confidential.  "In one sense,

11  information communicated to another remains confidential whenever it is customarily kept private, or at least

12  closely held, by the person imparting it."  *Id.* (citations omitted).  "In another sense, information might be

13  considered confidential only if the party receiving it provides some assurance that it will remain secret.  *Id.*

14  (quoting 1 Oxford Universal Dictionary Illustrated 367 (3d ed. 1961) ("spoken or written in confidence");

15  Webster's New World Dictionary 158 (1960) ("told in confidence")).  "At least the first condition has to be

16  met" in order for information to be considered confidential under Exemption 4, the Court concluded; "it is

17  hard to see how information could be deemed confidential if its owner shares it freely."  139 S. Ct. 2356.

18         The Court did not resolve whether Exemption 4 confidentiality *also* requires that the second

19  condition be met—in other words, whether privately held information might "*lose* its confidential character

20  for purposes of Exemption 4 if it's communicated to the government without assurances that the government

21  will keep it private."  139 S. Ct. at 2363 (emphasis in original).  "[T]here's no need to resolve" that question,

22  the Court reasoned, because the additional condition had been clearly satisfied by the retailers in that case.

23  *Id.*  Accordingly, the Court held that "[a]t least where commercial or financial information is both

24  customarily and actually treated as private by its owner and provided to the government under an assurance

25  of privacy, the information is 'confidential' within the meaning of Exemption 4."  *Id.* at 2366.  Thus, the

26  *Argus Leader* Court expressly left open the possibility that Exemption 4 might attach upon a showing only

27  that the requested information is treated as confidential by the provider, whether or not the Government

28  provided an assurance that its confidentiality would be maintained following submission.

1

**V.    ARGUMENT**

2      DOL conducted a search for records and located nine Form 300A records in response to Plaintiffs'

3  Second and Third FOIA requests.  DOL released these records to Plaintiffs, redacting only information

4  protected from disclosure under applicable exemptions.  DOL has fulfilled its obligations under FOIA, and

5  summary judgment should be entered in its favor.

6      **A.    DOL Conducted A Reasonable Search Of Its Records.**

7      Under FOIA, an agency has a duty to conduct a "reasonable" search for responsive documents.

8  *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  In order to prevail, the agency

9  must show that it made "a good-faith effort to conduct a search for the requested records, using methods

10  which can be reasonably expected to produce the information requested."  *See Oglesby v. U.S. Dep't of

11  Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990).  The agency may meet this burden by relying upon its declarations

12  that reasonably detail in a nonconclusory manner the scope and method the agency used to conduct its search

13  for responsive records. *Perry v. Block*, 684 F. 2d 121, 126 (D.C. Cir. 1982).

14      The reasonableness of an agency's search can depend on whether the agency properly determined

15  where responsive records were likely to be found, and searched those locations.  *See Sakamoto v. EPA*, 443

16  F. Supp. 2d 1182, 1198 (N.D. Cal. 2006) (finding agency's search within one region to be adequate when

17  agency "reasonably concluded" that responsive documents would "most likely" be there); *Garcia v. USCIS*,

18  168 F. Supp. 3d 50, 61 (D.D.C. 2016).  An agency's inability to locate every single responsive record does

19  not undermine an otherwise reasonable search.  *See Lahr v. NTSB*, 569 F.3d 964, 988 (9th Cir. 2009).

20  Further, an otherwise reasonable search is not negated by an agency's belated discovery of documents.  *See

21  Ireland v. IRS*, No. 16-02855, 2017 WL 1731679, at *5 (C.D. Cal. May 1, 2017); *W. Ctr. for Journalism v.

22  IRS*, 116 F. Supp. 2d 1, 10 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001) (concluding that agency

23  conducted reasonable search and acted in good faith by locating and releasing additional responsive records

24  mistakenly omitted from its initial response, because "it is unreasonable to expect even the most exhaustive

25  search to uncover every responsive file; what is expected of a law-abiding agency is that the agency admit

26  and correct error when error is revealed").

27      In the Form 300A FOIA Requests, Plaintiffs sought all 300A forms provided by Amazon as part of

28  Ohio Inspections 1377288.015, 1371360.015, and 1367521.015 and Illinois OSHA inspections

1371705.015, 1344215.015, 1343890.015, 1327615.015, 1301593.015.  Choi Decl., ¶¶ 4, 8.  The initial search properly determined the individual area offices where the responsive records were most likely to be found.  *Id.* ¶¶ 20-22.  Several of these offices were properly assigned portions of the requests, performed searches in the appropriate locations where the records would most likely be found (the individual inspection files), and located and produced responsive records.  *Id.* ¶¶ 20-24.  Thus, it is clear that OSHA made a good faith effort to perform a reasonable search and properly respond to Plaintiffs' Form 300A FOIA Requests.

Further, although two errors were made in the initial search, these errors do not establish that the initial search was inadequate.  In addition, both were corrected during a second, more exhaustive search.  *Id.* ¶¶ 35-37.  The second search thoroughly searched all relevant inspection files in all pertinent area offices, produced additional responsive records, and clarified the inspection file sources of each record.  *Id.*  The results of the second search show that OSHA acted in good faith by locating and releasing additional responsive records mistakenly omitted from its initial response.  Thus, OSHA conducted a reasonable search and properly responded to Plaintiffs' requests.

**B.     Confidential Commerical Information Contained In The Requested Form 300A Records Were Properly Withheld Under Exemption 4.**

Exemption 4 shields from mandatory disclosure "commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Following its review of the Form 300A records requested in Plaintiffs' Second and Third FOIA Requests, and Amazon's responses to its 12600 letters, DOL determined that these workplace injury summary logs, which were collected as part of the Illinois and Ohio OSHA inspections, were confidential commercial or financial information that had been obtained from a person, and were therefore protected under FOIA Exemption 4.  Choi Decl. ¶ 34.  The Supreme Court's articulation of the Exemption 4 standard in *Argus Leader* confirms that the requested information is appropriately withheld under Exemption 4.

**1.     The Information Is Commercial or Financial Information.**

The threshold requirement for the application of Exemption 4 is that the information constitute "commercial or financial information."[3]  5 U.S.C. § 552(b)(4).  Courts have rejected a narrow view of these

---

[3] Exemption 4 also applies to trade secrets, defined as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities."  *Public Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1288 (D.C. Cir. 1983).

terms that would confine Exemption 4 to records that would reveal "basic commercial operations" or "relate to the income-producing aspects of a business," *Public Citizen Health Research Grp. v. F.D.A.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983), in favor of a broader interpretation.  "The terms 'commercial' and 'financial' are given their ordinary meanings." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (citing *Public Citizen Health*, 704 F.2d at 1290); *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).  The "ordinary meaning" of the term "commercial" is understood broadly to encompass any information in which the provider has a "commercial interest." *Public Citizen Health*, 704 F.2d at 1290; *see also Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C.Cir.2006); *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 337 F. Supp. 2d 146, 168 (D.D.C. 2004) (under *Public Citizen Health*, the term "commercial" is "construed broadly"); *Comptel v. F.C.C.*, 910 F. Supp. 2d 100, 115 (D.D.C. 2012) ("commercial" is accorded its "ordinary meaning" and is "defined broadly").

The D.C. Circuit's *Public Citizen Health* case, in which the broad "commercial interest" standard is articulated, is cited approvingly in courts throughout the country, including the Ninth Circuit.[4]  *See Watkins*, 643 F.3d at 1194; *McClellan*, 835 F.3d at 1285; *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 49-50 (1st Cir. 2015); *Brown v. Perez*, 835 F.3d 1223, 1230 (10th Cir. 2016) ("ordinary meaning" of "commercial" dictates that "'[t]he exemption reaches ... broadly" to information in which the submitter has a commercial interest); *Chicago Tribune Co. v. FAA*, No. 97-cv-2363, 1998 WL 242611, at *2 (N.D. Ill. May 7, 1998).   As one district court in the First Circuit observed, "the circuit courts are nearly unanimous on" the meaning of the term "commercial," which "is given its ordinary meaning and applies broadly to information in which a private party would have a commercial interest if it had submitted the information to the government."  *DeLorme Pub. Co., Inc. v. Nat'l Oceanic & Atmospheric Admin.*, 917 F. Supp. 867, 873 (D. Me. 1996) (citing *Public Citizen Health*).

In addition to embracing the D.C. Circuit's *Public Citizen* case, the Ninth Circuit has articulated the

---

DOL is not claiming that the Form 300A records qualify as a trade secret under Exemption 4.

[4] Indeed, courts in this Circuit generally accord great deference to decisions from the D.C. Circuit and its lower courts:  "due to the fact that venue in FOIA cases is, by statute, established 'in the District of Columbia,' a significant proportion of FOIA cases arise in that District, which means that decisions of the District of District of Columbia with regard to FOIA are entitled to considerable deference."  *Hiken v. Dep't of Defense*, 872 F. Supp. 2d 936, 943 (N.D. Cal. 2012).

1   test in broader terms yet, endorsing the common meaning of "commercial" for purposes of FOIA as anything

2   that "relates to commerce, trade, or profit." *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1128-29 (9th Cir.

3   2007) (quoting *McClellan*, 835 F.2d at 1285). This language, which incorporates the inclusive phrase

4   "relates to," "has 'a broad scope ... and an expansive sweep.'" *Rodriguez-Valencia v. Holder*, 652 F.3d

5   1157, 1159 (9th Cir. 2011) (quoting *Morales v. Trans World Airlines,* 504 U.S. 374, 383–84 (1992)); *see*

6   *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138–39 (1990) (describing "relates to" as "deliberately

7   expansive); *Morales*, 504 U.S. at 383-84 ("the key phrase, obviously, is 'relating to.' The ordinary meaning

8   of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to

9   bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words

10  thus express a broad pre-emptive purpose"). Other courts have similarly invoked this expansive "relates to"

11  articulation. *See American Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978) (the term

12  "commercial" "means [anything] pertaining or relating to or dealing with commerce"); *New Hampshire*

13  *Right to Life*, 778 F.3d at 50 (Planned Parenthood Medical Standards Manual and other documents "surely

14  pertain or relate to commerce as that term is ordinarily understood").

15          As the Declaration of Heather McDougall, Amazon's Vice President of Workplace Health and

16  Safety, demonstrates, Amazon clearly has a "commercial interest" in the information sought here. The Form

17  300As contain occupational safety and health data that is an essential component of the worker productivity

18  and cost calculus, falling squarely within the rubric of "labor economics." *See Flightsafety Services Corp. v.*

19  *Dep't of Labor*, 326 F.3d 607, 611 (5th Cir. 2003). These reports reveal statistics and data—such as work-

20  related injuries and deaths, classifications of injuries, and total number of lost or restricted workdays due to

21  work-related injuries and illnesses—that are both "intimate aspects of [the providers'] business," *Watkins*,

22  643 F.3d at 1195, and critical to Amazon's operational mission and commercial success. Data regarding

23  injury and illnesses, including lost time, permits Amazon to evaluate and predict costs associated with

24  worker's compensation, employee absences, and short- and long-term disability and assists Amazon in

25  measuring economic effectiveness and in maximizing efficiency. Declaration of Heather MacDougall

26  ("MacDougall Decl.") ¶ 13. This tracking is important for Amazon to improve upon existing processes and

27  reduce waste. *Id.* The injury statistics affect insurance rates and are used to guide insurance policy decision-

28  making at the company. *Id.* The information is used by the company to identify operational needs and allot

1    funding for engineering controls, design changes, training resources, and additional headcount where needed.

2    *Id.*  In short, the tracking of this information is integral to Amazon's ability to accurately assess the overall

3    cost-effectiveness and viability of its business operations.  *Id.*

4         This information is also important for the enhancement of worker safety and the protection of its

5    workforce.  *Id.* ¶ 12.  Amazon uses the data to determine areas where safety, engineering and design controls,

6    first aid, and medical resources should be committed, and where changes and improvements can be made.

7    *Id.*  Amazon studies the information in connection with critical operational decision-making in the areas of

8    employee training, workplace safety improvements, safety equipment, and other resource allocation aimed at

9    reducing injuries and illnesses.  *Id.*  Although the presentation of this data in the Form 300A is a function of

10   OSHA regulatory requirements, the information is collected, maintained, and analyzed by Amazon

11   *independent* of the governmental requirement, for commercial purposes, because it constitutes vital

12   workplace safety and labor cost data that is fundamental to its workplace health and safety, operations, and

13   bottom line.  *Id.* ¶¶ 12-13; *see New Hampshire Right to Life*, 778 F.3d at 50 n.6 (information that is otherwise

14   "commercial" does not its nature simply because it is tendered in furtherance of a governmental program).

15        For these reasons, reports containing data relating to the safety of an entity's operations have been

16   found by courts to lie squarely within the definition of "commercial" under Exemption 4.  *See Critical Mass*

17   *Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 880 (D.C. Cir. 1992) (en banc) (safety reports

18   by a non-profit corporation regarding the operations of nuclear power plants held to be "commercial" under

19   Exemption 4).  Similarly, information that bears on a cost line-item is considered "commercial" even if only

20   tangentially related to the submitter's operations.  *See Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d

21   1188, 1195 (S.D. Cal. 2002) (well and groundwater-related data for property used for sand mining operations

22   held to be commercial information because "water is a precious, limited resource").  Workplace injury rate

23   data have long been considered by OSHA to be commercial information triggering the need to notify

24   submitters when a FOIA request was made; indeed in the two other federal cases considering similar data

25   submitted to OSHA, neither the parties nor the courts even paused to consider the possibility that this data

26   might not be commercial.  *See OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 163 n.23 (3d Cir.

27   2000) (noting that the plaintiff "concedes that the information is commercial in character"); *New York Times*

28   *Co. v. U.S. Dept. of Labor*, 340 F. Supp. 2d 394, 403 (S.D.N.Y. 2004) (DOL argued that work-place injury

1   information was "commercial information obtained from a person and privileged or confidential," while the

2   plaintiff countered only that the data "were neither 'obtained' or 'confidential').[5]

3          Although "not every bit of information submitted to the government by a commercial entity qualifies

4   for protection under Exemption 4," *Public Citizen*, 704 F.2d at 1290, the cases in which the "commercial"

5   standard is not met involve information that is truly incidental or extraneous to the submitter's commercial

6   operations.  Excluded as non-commercial under this standard is information with no inherent commercial

7   significance, such as "a bare list of names and addresses of employees," *see Getman v. NLRB,* 450 F.2d 670,

8   673 (D.C. Cir. 1971),[6] a list of aircraft registration numbers, *see Nat'l Bus. Aviation Ass'n v. FAA,* 686 F.

9   Supp. 2d 80, 86–87 (D.D.C. 2010), or airline records regarding in-flight passenger medical emergencies.  *See*

10  *Chicago Tribune Co. v. FAA,* No. 97-cv-2363, 1998 WL 242611, at *3 (N.D. Ill. May 7, 1998).  Unlike the

11  work-related injury rate reports at issue here, none of this information bears a "direct relationship with the

12  operations of a commercial venture."  *Chicago Tribune*, 1998 WL 242611, at *3.  For example, the medical

13  emergencies detailed in the reports requested in *Chicago Tribune* "do not naturally flow from commercial

14  flight operations, but rather are chance events which happened to occur while the airplanes were in flight."

15  *Id*. at *2.  By contrast, the Form 300A data at issue here documents employee w*ork-related* injuries and

16  illnesses—incidents that are not randomly connected to the operations of commercial entity but that are

17  *caused* by those commercial operations.  Employee workplace injury rates thus bear a direct relationship to

18  the operations of Amazon; indeed, Plaintiffs' own reporting on Amazon's safety record at its fulfillment

19

20  [5]In both cases, DOL determined that the FOIA requests triggered its regulation requiring it to provide the submitters with pre-disclosure notification because the requests sought commercial information that might be subject to Exemption 4.  In *New York Times*, the district court analyzed the submitter data under the *National Parks* test and concluded that, based on the Exemption 4 legal precedent at the time, the release of the data would not lead to substantial competitive harm and therefore was not precluded by Exemption 4.  In light of the *New York Times* decision, DOL took the position that employers' workplace injury data was not confidential for purposes of Exemption 4 because it would lead to substantial competitive harm, thereby obviating the need for pre-disclosure notification.  Once *Argus Leader* abrogated the *National Parks* test, DOL resumed notifying submitters under its pre-disclosure notification policy.  Meilinger Decl. ¶ 7; Choi Decl. ¶ 29-31.

25  [6] While an unadorned employee list may not be protected, labor force data that reveals strategic, economic, or operational information about the provider's enterprise is properly withheld.  *See Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.,* 559 F. Supp. 4, 6 (D.D.C.1981)  (including "manpower allocation" and "biographical data on key employees" among the categories of commercial information shielded by Exemption 4); *cf. Center for Investigative Reporting v. Dep't of Labor*, No. 19-cv-1843, 2019 WL 6716352, at **4-6 (N.D. Cal. Dec. 10, 2019) (diversity reports containing general companywide demographic information about employees not commercial where no further information was provided about specific positions or departments).

centers draws a direct connection between Amazon's worker injury rates and its operations, work processes, and strategic priorities. *See* Declaration of Pamela T. Johann Ex. A at 2 ("the company's obsession with speed has turned its warehouses into injury mills"); *id.* at 3 ("'Amazon needs to take a hard look at the facilities where so many workers are being hurt and either redesign the work processes, replace the top managers or both'"). This data not only "relates to" but indeed is a function of the commercial activity of Amazon, conveys information directly relevant to Amazon's operations and labor costs, and falls squarely within the definition of "commercial" in this Circuit.

### 2.      The Information Was Obtained From a Person

The second Exemption 4 requirement—that the information be "obtained from a person"—is easily satisfied. Under FOIA, the term "person" refers to individuals as well as to a wide range of entities, including corporations, banks, state governments, agencies of foreign governments, and Native American tribes or nations, who provide information to the government. *See, e.g., Nadler v. FDIC*, 92 F.3d 93, 95 (2d Cir. 1996). It applies to business entities as well as natural persons. 5 U.S.C. § 551(2); *see FlightSafety Servs.* 326 F.3d at 611. In this case, OSHA obtained the Form 300As from Amazon in connection with its investigations in Ohio and Illinois. Choi Decl. ¶¶ 4, 8. Therefore, the information was obtained from a person within the meaning of Exemption 4.

### 3.      The Information Is Confidential Under The *Argus Leader* Standard.

Finally, Exemption 4 applies to information that is either privileged[7] or confidential. *Argus Leader* holds that to be shielded from disclosure under Exemption 4, information must be "customarily and actually treated as private by its owner." *Argus Leader*, 139 S. Ct. at 2366. In setting forth this test, the *Argus Leader* Court cited approvingly the "much more traditional understanding of the statutory term 'confidential'" set forth in *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879-80 (D.C. Cir. 1992) (en banc). *Argus Leader*, 139 S. Ct. at 2365. The *Critical Mass* court held that information qualifies as confidential "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass*, 975 F.2d at 880; *see also Forsham v. Harris*, 445 U.S. 169, 184-85 (1980). The focus of this

---

[7] For purposes of Exemption 4, "privileged" information may include information protected under, for example, the attorney-client privilege, attorney work-product privilege, or doctor-patient privilege. *See, e.g., Wash. Post Co. v. HHS*, 690 F.2d 252, 267 n.50 (D.C. Cir. 1982). Defendant is not asserting a claim of privilege regarding the Form 300A documents.

1  inquiry is "how the particular party customarily treats the information, not how the industry as a whole treats

2  the information." *Center for Auto Safety v. National Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 17-18

3  (D.D.C. 2000) (citing *Critical Mass*, 975 F.2d at 880).

4  There can be little doubt that *Argus Leader* significantly expands the reach of Exemption 4 and that a

5  substantial volume of previously releasable information is now protected from disclosure; as one Court in

6  this district observed, plaintiffs face a "steep uphill battle under the new Exemption 4 standard." *American*

7  *Small Business League v. Dep't of Defense*, 411 F. Supp. 3d 824, 832 (N.D. Cal. 2019) ("*ASBL*") (granting

8  summary judgment to defendants after *Argus Leader*, reversing a pre-*Argus Leader* decision in the same

9  case to the contrary).  Moreover, the submitter's own affirmation of confidentiality is the key inquiry in this

10  analysis.  *Id.*  In *Argus Leader*, the confidentiality standard was met because the testimony of the owners of

11  the information established that they "customarily do not disclose" the information "or make it publicly

12  available 'in any way.'"  139 S. Ct. at 2363.  The same holds true here.  As described below, the Form 300A

13  records contain information that is treated as private by the Amazon in the ordinary course of business and

14  that is actually and customarily not released to the public.

15            **(i)**       **The Form 300As And Workplace Injury Rate Information And Is**

16                      **Customarily And Actually Treated As Private By Amazon.**

17  The "Summary of Work-Related Injuries and Illnesses" forms sought by Plaintiffs contain

18  confidential information specific to each Amazon facility, including total hours worked, total number of

19  employees, total rates of injury, and total rates of missed work.  Choi Decl. ¶ 12 & Ex. C.  The total injuries

20  and illnesses are listed by category, and this information could be used to profile Amazon's injury trends at

21  individual fulfillment centers, which Amazon considers to be sensitive and proprietary information.

22  MacDougall Decl. ¶ 7.  Accordingly, Amazon classifies these forms, and the data contained in them, as

23  confidential, non-public information.  *Id.* ¶¶ 2-3.  It treats this information accordingly:  it keeps the forms

24  private, stamps all logs "confidential," and restricts general access to the logs to a limited number of

25  employees with recordkeeping responsibilities.  *Id.* ¶ 6.  This has been Amazon's policy and custom for a

26  number of years.  *Id.* ¶¶ 2-3.

27  Amazon complies with mandatory OSHA regulations that require certain limited disclosure of these

28  logs to the government and to Amazon employees in certain circumstances.  *Id.* ¶ 3.  Specifically, it provides

1   these forms to OSHA in connection with inspection or enforcement actions; it submits the information to

2   OSHA electronically through the Agency's "Injury Tracking Application" as required by a 2016

3   recordkeeping regulation;[8] it posts the summary logs for a three-month period in each workplace; and it

4   provides a copy upon request to current or former employees or their representatives.  *Id.* ¶ 3.  Apart from

5   these limited and controlled disclosures, Amazon keeps these forms private, does not disclose the data, and

6   does not make it publicly available in any way.  *Id.* ¶ 6; *see Argus Leader*, 139 S. Ct. at 2363.  This is both

7   Amazon's customary policy and actual practice with respect to the Form 300As at issue in this case.

8   MacDougal Decl. ¶ 6.   These protective measures have proven effective in restricting access to this

9   information; indeed Plaintiffs have apparently been unsuccessful in securing these forms through other

10   means.  *See* Johann Decl. Ex. A at 7.

> **(ii)    The Limited Required Disclosure of Form 300A Data To Employees Does Not Defeat Exemption 4 Protection.**

13          Amazon's limited mandatory disclosure pursuant to OSHA regulations does not strip this

14   confidential information of its private character.  The "common usage" standard of confidentiality, embraced

15   in *Argus Leader*, does not demand "complete anonymity or secrecy."  *Department of Justice v. Landano*,

16   508 U.S. 165, 173 (1993).  *Argus Leader* itself recognizes that a standard of strict secrecy is not required as

17   long as information is "closely held" and owners do not "share[] it freely."  *Argus Leader*, 139 S. Ct. at 2363.

18   Information is not stripped of its confidential status due to limited disclosures, even to third parties outside of

19   a company, as long as the disclosures are not widespread and not made to the general public.  "Limited

20   disclosures, such as to suppliers or employees, do not preclude protection under Exemption 4, as long as

21   those disclosures are not made to the general public."  *Center for Auto Safety v. National Highway Traffic*

22   *Safety Admin.*, 93 F. Supp. 2d 1, 17-18 (D.D.C. 2000) (citing *Critical Mass*, 975 F.2d at 880).

23

---

24   [8] Since 2017, Amazon has been required to submit electronically the data from its Form 300As for each establishment to OSHA pursuant to a recordkeeping regulation that was promulgated in 2016.
25   *See* 29 C.F.R. § 1904.41(a).  OSHA has not publicly released these submissions and has taken the position that this data is protected from FOIA disclosure under Exemption 4.  *See Center for*
26   *Investigative Reporting v. Dep't of Labor*, No. 18-cv-02414-DMR (N.D. Cal.), Dkt. No. 28 (Declaration of Patrick J. Kapust). The full set of Form 300A submissions for all employers covered by the regulation, comprising hundreds of thousands of records, is the subject of two separate FOIA lawsuits,
27   one brought by Plaintiff Center for Investigative Reporting in this District, No. 18-cv-02414-DMR, and the second pending in the District of the District of Columbia.  *See Public Citizen Foundation v. Dep't*
28   *of Labor*, No, 18-cv-0117.  Motions for summary judgment are currently pending in both cases.

Pursuant to this standard, Amazon's limited release of the Form 300As, required by federal regulation, to employees and former employees of the subject establishment, does not abrogate the applicability of Exemption 4.  Amazon's Form 300A data is released in a limited and strictly regulated manner, as required by 29 C.F.R. Part 1904.  Under that regulation, employers are obliged to post the Form 300A information internally in the workplace for three months, 29 C.F.R. § 1904.32(b)(6), and to disclose the form upon request to current and former employees (or their representatives).  29 C.F.R. § 1904.35.  This legally mandated disclosure is limited in both time and reach and is not tantamount to public disclosure of the data.  The Court of Appeals for the Third Circuit agreed when it held that "the posting of an annual injury and illness summary at the work site itself is a limited disclosure to a limited audience, a disclosure which is surely insufficient to render the data publicly available." *OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 163 n. 25 (3d Cir. 2000); *New York Times*, 340 F.Supp. 2d at 402 (posting of injury information at worksite is not "public").   Amazon complies with this requirement, but its logs are posted in an area that is not accessible to the public and are restricted to employee eyes only.  MacDougall Decl. ¶ 5.

The parallel legal requirement to provide a copy of the information to employees and former employees is similarly limited and controlled.  Indeed, the regulation itself describes this mandatory disclosure framework as "limited access to . . . injury and illness records for . . . employees and their representatives."  29 C.F.R. § 1904.35(a)(2).  This information is not shared freely and voluntarily to the general public, and disclosure is neither routine nor automatic; rather, it is available only to a small group of Amazon-affiliated individuals who make a specific request for certain information.  29 C.F.R. § 1904.35.  Because any release is contingent on individuals making a specific request for an individual form, any disclosure is to, at most, a small subset of all employees.

Although the regulation itself does not impose further limitations on disclosure because "a prohibition on the use of the data by employees or their representatives is beyond the scope of OSHA's enforcement authority," 66 Fed. Reg. 5916, 6058, 2001 WL 42227 (Jan. 19, 2001) ("Final Rule Preamble"), OSHA has noted that the "access requirements were intended as tool for employees and their representatives to affect safety and health conditions at the workplace, not as a mechanism for broad public disclosure of injury and illness information."  *Id.* at 6057.  While acknowledging that further dissemination by employees to the public was not prohibited under the regulation, OSHA referred to this possibility as "misuse," "abuse,"

and "inappropriate uses of the records." *Id.* at 6056-58.  In addition, OSHA emphasized that it had not detected any significant problems with inappropriate dissemination to the public in the past, suggesting that any such abuse was "infrequent."  *Id.*  Due to OSHA's concern that restrictions might have a chilling effect on employees' proper use of the records for their own safety and health purposes, OSHA declined to include limitations on further dissemination in the regulation itself.  This decision was not intended to advance a policy of public disclosure or to encourage the free distribution of the information—which OSHA considered inappropriate use—but rather was taken because the risk of such improper disclosure was minimal.  Indeed, OSHA explicitly acknowledged the sensitive nature of this information, included language on the forms to encourage recipients to maintain its confidentiality, and noted that "[e]ncouraging parties with access to the forms to keep the information confidential where possible is reasonable and should not discourage the use of the information for safety and health purposes." *Id.* at 6058.

　　　　As a result, employers can and do provide these forms to employees and former employees with an instruction or expectation that they be kept confidential, just as they may with any other confidential information that is shared with employees.  And Amazon does precisely that.  It takes steps to maintain and protect the confidentiality of the form, including marking it as "confidential."  MacDougall Decl. ¶ 4.  It provides these forms to current and former employees or their authorized representatives only upon lawful request pursuant to the recordkeeping regulation.  *Id.*  And it notifies recipients that it considers the form to be confidential, and asks that this confidentiality be maintained.  *Id.*  Ms. MacDougall's description of the protective measures that Amazon takes to safeguard the confidentiality of these reports is consistent with Plaintiffs' own reporting.  In Will Evans's article for *Reveal*, he notes that "Amazon has resisted making its own safety records public," and he acknowledges that in response to employee requests for summary reports, "warehouse managers used identical language to call them confidential and request they be kept secret." Johann Decl. Ex. A at 7.  These steps have apparently been effective in preventing the dissemination of these forms, even in the face of Plaintiffs' attempt to exploit the employee record-sharing regulations to secure this information through the back door. *See id.* at 7 ("Reveal is now seeking to compile the remaining injury logs. If you've worked from Amazon, here's how you can get the records and share them with Reveal.").[9]

---

[9] Reveal's attempt to recruit Amazon employees—who would otherwise not be requesting the information and who do not need it for their own health and safety purposes—to gain access to these confidential records goes well beyond the intention and purpose of these regulations.  OSHA explicitly

The required disclosure of confidential information pursuant to regulation should not waive the confidentiality where the disclosure is limited and Amazon has otherwise maintained the information as private.  *See Abrams v. Office of the Comptroller of the Currency*, No. 05-cv-2433, 2006 WL 1450525 at *5 (N.D. Tex. May 25, 2006), *aff'd*, 243 F. App'x 4 (5th Cir. 2007) (agency did not waive Exemption 8 protection when it released information to limited number of people in conjunction with administrative subpoena, as required by agency regulations).  The *Argus Leader* Court found the SNAP data to be confidential notwithstanding the fact that "small groups of employees" within the company had access to the information.  This limited disclosure within an employer's establishment, or to individual employees upon request, is a far cry from disclosure to the general public, and in any event does not reflect any voluntary conduct on the part of Amazon that might be considered to have waived the confidentiality of the information.  Like the defendant in *Argus Leader*, Amazon does voluntarily disclose this information or make it publicly available in any way.  *Argus Leader*, 139 S. Ct. at 2363.  The first condition for confidentiality under Exemption 4 is therefore met.

   **(iii)** **The Privately Held Information Did Not Lose Its Confidential Nature Upon Submission To The Government In The Circumstances Of This Case.**

    **(a)** **The Second *Argus Leader* Condition Is Not Applicable Here.**

As discussed in Part IV.C above, the *Argus Leader* Court did not decide whether privately held information can in some instances "lose its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private." *Argus Leader*, 139 S. Ct. at 2363.  To the extent that this second *Argus Leader* prong may be applied in certain circumstances to strip privately held information of its confidential nature following submission to the government, those circumstances do not exist here, where Amazon was required to provide the Form 300As as part of the OSHA investigations and where there was no reason to anticipate disclosure.

Although the Supreme Court in *Argus Leader* did not provide further analysis of what circumstances, if any, might lead to a loss of confidentiality, the scenario contemplated by the Court may have been one in which the submitter functionally waives the confidentiality of the information by providing it to the

noted that these regulations were not intended to serve as "a mechanism for broad public disclosure of injury and illness information."  Final Rule Preamble, 66 Fed. Reg. at 6057.

No. 19-cv-05603-SK    20

1    government *voluntarily* and without any express or implied assurance of confidentiality.  *See Center for*

2    *Investigative Reporting v. U.S. Customs and Border Protection*, No. 18-cv-2901-BAH, 2019 WL 7372663,

3    at \*13 (noting that the *Argus Leader* Court stopped short of imposing this second requirement, possibly

4    because it intended "to treat involuntarily submitted information and voluntarily submitted information

5    differently from one another").  In these circumstances, where the private party affirmatively *chooses* to

6    submit the information with knowledge that it will be publicly released, the information may no longer

7    qualify as confidential under the "ordinary, contemporary, common meaning" of the term; it cannot be said

8    in that case that the submitter continues to hold the information in confidence.  However, those

9    circumstances are inapplicable here, where submission of the Form 300A was required.  Whatever

10   assurances were or were not given does not call into question whether Amazon sincerely holds the

11   information in confidence.   It neither makes sense, nor is it necessary, to evaluate whether an assurance of

12   confidentiality was provided by the government when the information is provided involuntarily.  *See id.*

13   ("when information is involuntarily submitted to the government, the government often does not provide an

14   assurance of privacy in return").  An involuntary submitter has not engaged in any conduct that is in

15   consistent with an assertion of privacy, regardless of the government's assurances.

16           In any event, whether privately held information loses its confidential character when it is disclosed

17   to the government depends on an objective inquiry into the circumstances surrounding disclosure.  *Cf. United*

18   *States Dep't of Justice v. Landano*, 508 U.S. 165, 179 (1993) (adopting an objective, context-based test of

19   confidentiality under Exemption 7(D)).  For example, when information obtained from nongovernment

20   entities is intimately linked to the government's own actions so that disclosure of the government's actions

21   would effectively disclose the information in question, no expectation of confidentiality would be objectively

22   reasonable absent some assurance by the government that the information would not be disclosed.

23   Accordingly, in those circumstances and others in which there is reason to expect that the government might

24   disclose the information at issue, express or implied assurances by the government that the information will

25   remain private may be relevant in assessing whether the information retained its confidential character.

26   Nothing in Exemption 4 suggests that government assurances are necessary to establish confidentiality in the

27   absence of a reason to anticipate disclosure.  Here, there was no reason for Amazon to expect that its

28   information would be disclosed.  As discussed below, Amazon requested that the information be kept

private, and OSHA's Field Operations Manual commits the government to respecting this request.

The view that commercial information is confidential, and thus exempt from disclosure, if it is generally kept private is consistent with FOIA's purpose. The statute is intended to require disclosure when it will "contribut[e] significantly to public understanding of the operations or activities of the government." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). Congress did not design FOIA generally to require disclosure of the commercial or financial information of nongovernment entities. The first condition of confidentiality adopted in *Argus Leader* is thus consistent with both the text and purpose of the statute, and in the absence of special circumstances—voluntary submission in a context in which there is a reason to anticipate government disclosure—the inquiry should end after a determination of whether the submitter customarily and actually treats the information as private.

(b)    The Information Was "Provided to the Government Under An Assurance of Privacy"

To the extent that the Court considers whether the commercial or financial information was "provided to the government under an assurance of privacy" as part of the Exemption 4 analysis, *Argus Leader*, 139 S. Ct. at 2366, the record demonstrates that it was.

In *Argus Leader*, the Supreme Court held—without deciding if this condition was required—that the "retailers before us clearly satisfy this condition" because "the government has long promised them that it will keep their information private." *Id.* at 2363 (citing 43 Fed. Reg. 43275 (1978) and Brief for United States as *Amicus Curiae* 27-30). OSHA's Field Operations Manual, which sets forth OSHA's policy and procedures governing site inspections, contains a similar promise, affirming that the material obtained during inspections is confidential,[10] and that "classified or trade secret information" (defined as "matter that are not

---

[10] These Form 300As were submitted by Amazon prior to the *Argus Leader* decision, at a time when the legal standard for determining whether information could be withheld under Exemption 4 was the "competitive harm" test. Governed by this standard, it was OSHA's policy to release individual Form 300A records in response to FOIA requests directed to specific investigative case files; OSHA understood such disclosure to be required by law. Meilinger Decl. ¶ 6. Since *Argus Leader*, OSHA reevaluated its policy and concluded that these records would be protected from disclosure under Exemption 4 if treated as confidential by their submitters. In any event, the possibility of FOIA disclosure as required by law in response to a speculative future request does not undermine OSHA's policy of maintaining the confidentiality of these documents or undercut the assurance provided by OSHA at the time of the submission.

1 of public or general knowledge" must be handled in accordance with OSHA regulations." Choi Decl. ¶¶ 17-

2 18. Both the OSH Act of 1970, *see* 29 U.S.C. § 15, and OSHA regulations, *see* 29 C.F.R. § 1903.9, direct

3 that confidential information obtained by OSHA in the course of inspections must be protected from

4 disclosure. In addition, 18 U.S.C. § 1905 makes it unlawful for any employee of the United States to

5 disclose information that "concerns or relates to," among other categories, "confidential statistical data."

6 Amazon relied on this language in the Field Operations Manual when submitting its information to

7 OSHA in connection with the inspections. In its cover letter accompanying the requested logs, Amazon

8 notifies OSHA that it considers the material confidential, requests that it be maintained as such, and

9 specifically references OSHA's Field Operations Manual as well as federal regulations and statutory

10 authority requiring the Agency to protect the confidentiality of the information:

> 11 Please note that Amazon considers the documents attached to this response to be, and
> to contain, trade secrets and/or confidential, sensitive or proprietary information.
> 12 Amazon specifically requests that OSHA protect and handle such documents,
> information and photographs in accordance with 29 U.S.C. § 664, 29 C.F.R. §
> 13 1903.9, the Trade Secret Act (18 U.S.C. § 1905), the OSHA Field Operations
> Manual, and all other applicable regulations and guidelines concerning OSHA's
> 14 handling of trade secrets and confidential, sensitive and proprietary information.

15 MacDougal Decl. ¶ 11 & Ex. A.

16       **C.       DOL Properly Asserted Exemption 7(C) To Protect The Privacy Of Third Parties.**

17 DOL applied Exemption 7(C) to redact the signatures and direct phone numbers of signatories of the

18 Form 300A records. Choi Decl. ¶ 46. Section 7(C) exempts disclosure of information based on privacy

19 concerns where the information is "compiled for law enforcement purposes." *Church of Scientology v. IRS*,

20 995 F.2d 916, 919 (9th Cir. 1993). Documents compiled in connection with OSHA workplace investigations

21 satisfy the Exemption 7 law enforcement standard. *See Butler v. Dep't of Labor*, 316 F. Supp. 3d 330, 336

22 (D.D.C. 2018). Private citizens have a privacy interest in their names and identifying information. In these

23 circumstances, the requesting party bears the burden of establishing that disclosure of this information would

24 serve a public interest cognizable under FOIA and that this interest outweighs the privacy interest of the

25 individuals. *Associated Press v. DOD*, 549 F.3d 62, 66 (2d Cir. 2008). The names and addresses of private

26 citizens appearing in records covered by Exemption 7 may be categorically withheld in the absence of

27 compelling evidence that the agency is engaged in illegal conduct. *Butler*, 316 F. Supp. 3d at 337.

28       **D.       DOL Properly Complied With Its Obligation To Provide "Reasonably Segregable"
                Information.**

1   FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably

2   segregable" information must be disclosed after deletion of the exempt information unless the non-exempt

3   portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Kurdyukov v. U.S. Coast*

4   *Guard*, 578 F. Supp. 2d 114, 128 (D.D.C. 2008).  In this case, DOL redacted only the confidential data and

5   private information contained in the forms.  Choi Decl. ¶ 47-48 & Exs. C, F.  All other portions of the

6   responsive records were segregated and released to Plaintiffs.  *Id.* ¶ 49.  Accordingly, DOL complied with its

7   obligation to disclose all reasonably segregable information.

8         **E.**      **DOL's Assertion Of Exemption 4 Satisfies The FOIA Improvement Act.**

9   The FOIA Improvement Act of 2016 ("FIA"), 5 U.S.C. § 552(a)(8)(A)(i), as relevant, requires

10  agencies to release records that are covered by a FOIA exemption if release would not "reasonably harm an

11  exemption-protected interest."  *Rosenberg v. Dep't of Defense*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).  In

12  other words, a purely technical application of an exemption may not be sufficient to justify withholding.

13  *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019).

14  To establish the harm to the exemption-protected interest resulting from disclosure, the government

15  may address the information categorically, as long as it is not done in a perfunctory fashion.  *See Rosenberg*,

16  342 F. Supp. 3d at 79; *see also Sorin v. DOJ*, 758 F. App'x 28, 33 (2d Cir. 2018) (rejecting an argument that

17  the agency failed to comply with the FIA because the agency provided "sound reasons for withholding" the

18  information).  Moreover, the Government may rely on declarations to show the exemption-protected harm.

19  *See Judicial Watch*, 375 F. Supp. 3d at 101; *Cause of Action Inst. v. DOJ*, 330 F. Supp. 3d 336, 355 (D.D.C.

20  2018); *Sorin v. DOJ*, 280 F. Supp. 3d 550, 566-67 (S.D.N.Y. 2017), *aff'd*, 758 F. App'x 28.

21  Exemption 4 is intended to protect the interests of both the government and submitters of

22  information.  *See Argus Leader*, 139 S. Ct. at 2366.  Here, release of the relevant information would harm the

23  interests of OSHA and Amazon.  First, protection of confidential information submitted in connection with

24  inspections is key to ensuring cooperation by the targets of these investigations, and in carrying out OSHA's

25  mission of ensuring safe and healthful working conditions in this country.  Choi Decl. ¶ 18.  It is reasonable

26  to conclude that disclosure of the Forms 300As might harm this interest; a company that submits a

27  confidential form, requests that it be kept confidential, and subsequently learns that the form was released to

28  the public may be less likely to cooperate with OSHA, undermining this important workplace safety regime.

1   This concern lies at the heart of the Exemption 4 interest that *Argus Leader* expressly recognized: "when

2   Congress enacted FOIA it sought a 'workable balance' between disclosure and other governmental

3   interests—interests that may include providing private parties with sufficient assurances about the treatment

4   of their proprietary information so they will cooperate in federal programs and supply the government with

5   information vital to its work."

6      Concurrently, release of the relevant information would harm Amazon's and its employees' interests.

7   The "relevant protect interest" in Exemption 4 cases "is that of the information's *confidentiality*—that is, its

8   private nature." *ASBL*, 411 F. Supp. 3d at 836 (emphasis in original).  Because disclosure destroys the

9   private nature of the information, it necessarily harms an interest protected by the Exemption.  *Id.*  In

10  addition, the Form 300As contain confidential information specific to each Amazon facility and listed by

11  categories of injuries and illnesses.  Public disclosure of this information could be used to profile Amazon's

12  injury trends at individual fulfillment centers, jeopardizing the confidentiality of the private and sensitive

13  source material.  MacDougal Decl. ¶ 7.

14  **VI.    CONCLUSION**

15     For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in

16  its favor.

17  DATED: March 4, 2020                    Respectfully submitted,

18

19                                          DAVID L. ANDERSON
                                            United States Attorney

20                                          */s/ Pamela T. Johann*
                                            PAMELA T. JOHANN

21                                          Assistant United States Attorney

22                                          Attorneys for Defendant UNITED STATES
                                            DEPARTMENT OF LABOR

23

24

25

26

27

28