1
2  D. Victoria Baranetsky (Cal. Bar No. 311892)
   THE CENTER FOR INVESTIGATIVE
3  REPORTING
   1400 65th St., Suite 200
4  Emeryville, CA 94608
   vbaranetsky@revealnews.org
5  Telephone: (510) 982-2890
6
   Attorney for Plaintiffs
7
8
9            **UNITED STATES DISTRICT COURT**
          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10                  **OAKLAND DIVISION**
11
   THE CENTER FOR INVESTIGATIVE      )   Case No. 3:19-cv-5603-SK
12 REPORTING and WILL EVANS,         )
                        Plaintiffs,  )   **OPPOSITION TO DEFENDANT'S**
13      v.                           )   **MOTION FOR SUMMARY JUDGMENT**
                                     )   **AND NOTICE OF CROSS MOTION AND**
   UNITED STATES DEPARTMENT OF       )   **CROSS MOTION FOR SUMMARY**
14 LABOR,                            )   **JUDGMENT; MEMORANDUM OF**
                        Defendant.   )   **POINTS AND AUTHORITIES IN**
15                                   )   **SUPPORT OF CROSS MOTION FOR**
                                     )   **SUMMARY JUDGMENT**
16                                   )
                                     )
17                                   )
                                     )   Date:  May 18, 2020
18                                   )   Time: 1:30 PM
                                     )   Place: Courtroom C, 15th Floor
19                                   )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22                                   )
                                     )
23                                   )
                                     )
24 _____
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. III

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................................... 2

    A.  OSHA Requires Federal Contractors to Submit Form 300As to Ensure Safety ..... 2
    B.  CIR's FOIA Requests, Administrative Appeals, and Initiation of this Action. ....... 4
    C.  Disclosure of Amazon's Form 300As is in the Public Interest .................................. 5
        1.  Form 300As Contain Information of Public Interest ........................................... 5
        2.  Workplace Safety at Amazon is a Matter of Public Interest ............................... 6
    D.  Form 300As Were Intended to Be Made Public ........................................................ 7
    E.  Overbroad Assertions of Commerciality and Trade Secrecy by Technology
    Companies is a Growing Problem. ................................................................................ 8

III.  ARGUMENT ................................................................................................................ 9

    A.  The Freedom of Information Act and the Standard of Review ................................. 9
    B.  CIR is Entitled to Summary Judgment Because the Government Has Improperly
    Withheld Form 300As Under Exemption 4. ................................................................. 10
        1.  Form 300As are improperly withheld under Exemption 4 because they are not
        commercial. ........................................................................................................... 10
            (a)  Form 300As are not of "a commercial nature." ......................................... 11
            (b)  Form 300As do not serve "a commercial function." ................................. 14
        2.  Form 300As are improperly withheld under Exemption 4 because they are not
        confidential. ........................................................................................................... 15
            (a)  Amazon Form 300As are not customarily treated as confidential. ............ 16
            (b)  Amazon Form 300As are not actually treated as confidential. ................... 18
            (c)  OSHA's assurance of publicity spoils Amazon's assurance of privacy claim. ........... 21
            (d)  Claiming Form 300As are confidential as a pretense is prohibited under
            Exemption 4. ....................................................................................................... 22
    C.  CIR is Entitled to Summary Judgment Because the Government Has Failed to
    Meet the Foreseeable Harm Standard .......................................................................... 22
        1.  There are no reasonably foreseeable commercial harms from releasing Form 300As. ... 23
        2.  There are no other reasonably foreseeable harms from releasing Form 300As ............... 24

IV.  CONCLUSION ........................................................................................................... 25

-ii-

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

# TABLE OF AUTHORITIES

## STATUTES

5 U.S.C. § 552(a)(6)(A) ........................................................................... 4

5 U.S.C. § 552(a)(8)(A) ........................................................................ 2, 24

5 U.S.C. § 552(b)(4) ....................................................................... viii, 1, 10, 23

5 U.S.C. § 552(b)(7)(C) ........................................................................... 4

5 U.S.C. § 552(b)(7)(D) ........................................................................... 4

8 U.S.C. § 1101(a)(43)(R) ......................................................................... 15

## CASES

*Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863 (2d Cir. 1978) ........................................ 11

*Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824 (N.D. Cal. 2019) ............... 9, 17

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018) ............................................ 20

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ................................................................... 20

*Brown v. Perez*, 835 F.3d 1223 (10th Cir. 2016) .............................................................. 12

*Chi. Tribune Co. v. Fed. Aviation Admin.*, 97-cv-2363, 1998 WL 242611 (N.D. Ill. May 7, 1998) ........................................................................................... 11, 12

*Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992) ......................................... 16

*Ctr. for Investigative Reporting v. Dep't of Labor*, No. 4:19-cv-1843-KAW 2019 WL 6716352, 424 F.Supp.3d 771 (N.D. Cal. Dec. 10, 2019) ................................................................ 23

*Ctr. for Investigative Reporting v. U.S. Cust. and Border Protec.*, No. 1:18-cv-02901-BAH, 2019 WL 7372663 (D.D.C. Dec. 31, 2019) ........................................................................ 16, 23

*Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) ................................................. 9

*Dow Jones Co. v. Fed. Energy Reg. Comm'n*, 219 F.R.D. 167 (C.D. Cal. 2003) .............................. 12

*Ecological Rights Found. v. Fed. Emerg. Mgmt. Agency*, 16-CV-05254-MEJ, 2017 WL 5972702 (N.D. Cal. Nov. 30, 2017) ................................................................................... 24

*FBI v. Abramson*, 456 U.S. 615 (1982) ....................................................................... 15

-iii-

*Food Mkt'g Inst. v. Argus Leader Media*, 139 S. Ct. 2365 (2019)............................................ passim

*Getman v. NLRB,* 450 F.2d 670 (D.C. Cir. 1971) ........................................................ 12

*Greenberg v. FDA*, 803 F.2d 1213 (D.C. Cir. 1986) ........................................................ 11

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) ...............23, 25

*Kentucky v. King*, 563 U.S. 452, 464 (2011)........................................................ 24

*Kungys v. United States*, 485 U.S. 759 (1988) ........................................................ 24

*Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009) ........................................................ 9

*Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008)........................................ 9

*Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019) ................................. 23

*Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700, at *2 (N.D. Cal. Nov. 24, 1993) ........................................................................................................ 22

*Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001) ............... 14

*Milner v. Department of the Navy,* 562 U.S. 562 (2011) ................................................ 15

*Morales v. Trans World Airlines*, 504 U.S. 374 (1992)................................................ 15

*Nat. Resources Def. Council v. U.S. Envt'l Protection Agency*, 17-CV-5928 (JMF), 2019 WL 3338266 (S.D.N.Y. July 25, 2019) ........................................................ 24

*Nat'l Bus. Aviation Ass'n v. FAA,* 686 F.Supp.2d 80 (D.D.C. 2010)........................................12, 15

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)....................................11, 14

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768–69 (D.C. Cir. 1974) ................ 10

*New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 47 (1st Cir. 2015) ........................................................................................................ 14

*New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp. 2d 394 (S.D.N.Y. 2004)........................ 1

*Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003) ................................................ 13

*Pell v. Procunier*, 417 U.S. 817 (1974) ........................................................ 20

*Pub. Citizen Found. v. Dep't of Labor*, No. 1:18-cv-00117-EGS-GMH (D.D.C. Jan. 19, 2018)...... 6

*Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280 (D.C. Cir. 1983) .10, 15

*Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81 (D.D.C. 2013) .12, 13, 15

-iv -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

*Racal–Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F.Supp. 4 (D.D.C. 1981)..................11, 13

*Reporters Comm. for Freedom of the Press v. FBI*, CV 15-1392 (RJL), 2020 WL 1324397 (D.D.C. Mar. 20, 2020) ........................................................................................................... 23

*Rodriguez-Valencia v. Holder*, 652 F.3d 1157 (9th Cir. 2011)...................................................... 15

*Rosenberg v. U.S. Dep't of Def.*, 17-CV-00437 (APM), 2020 WL 1065552 (D.D.C. Mar. 5, 2020) ............................................................................................................................................ 23

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)........................................................... 16

*Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73 (D.C. Cir. 1974)........................................ 11

*Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012) ........................................................................................................................ 14

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979).................................................................... 20

*Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188 (S.D. Cal. 2002)..................................... 12

*United States v. Lopez*, 514 U.S. 549 (1995) ............................................................................. 11

*United States v. Morrison*, 529 U.S. 598 (2000) ......................................................................... 11

*United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 564 (D.C. Cir. 2010)............................. 22

*United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557 (D.C. Cir. 2010) ................................... 22

*Wash. Research Project, Inc. v. U.S. Dep't of Health*, 504 F.2d 238 (D.C. Cir. 1974) ................. 15

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011)...9, 10, 11

*Wickard v. Filburn*, 317 U.S. 111 (1942) ................................................................................... 11

**REGULATIONS**

29 C.F.R. § 1904.0 ..................................................................................................................... 3

29 C.F.R. § 1904.32 ................................................................................................................... 3

29 C.F.R. § 1904.32 ................................................................................................................... 1

29 C.F.R. § 1904.35 ............................................................................................................... 3, 19

29 C.F.R. § 1904.41 ................................................................................................................... 3

-v-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

**RULES**

Improve Tracking of Workplace Injuries and Illnesses, 78 Fed. Reg. 67,254 (Nov. 8, 2013) (to be codified at 29 C.F.R. §§ 1904, 1952)..........................................................................................7

Improve Tracking of Workplace Injuries and Illnesses, 81 Fed. Reg. 29,624 (May 12, 2016) (to be codified at 29 C.F.R. §§ 1902, 1904)............................................................................. passim

Modernization of OSHA's Injury and Illness Data Collection Process, 75 Fed. Reg. 24,505 (May 5, 2010) (to be codified at 29 C.F.R. § 1904) ..............................................................................7

Occupational Injury and Illness Recording and Reporting Requirements, 66 Fed. Reg. 6,058 (Jan. 19, 2001) (to be codified at 29 C.F.R. §§ 1904, 1952) ...................................................... passim

Tracking of Workplace Injuries and Illnesses, 84 Fed. Reg. 387 (Jan. 25, 2019) (to be codified at 19 C.F.R. § 1904)............................................................................................................18, 20


**OTHER AUTHORITIES**

Al-Amyn Sumar, *Unpacking FOIA's "Foreseeable Harm" Standard*, 35 Comms. Law. 15 (2020)24

Annie Palmer, *'Amazon is not taking care of us': Warehouse workers say they're struggling to get paid despite sick leave policy*, CNBC, Apr. 8, 2020, https://www.cnbc.com/2020/04/08/amazon-warehouse-workers-say-they-struggle-to-get-paid-despite-sick-leave-policy.html .....................7

Bruce Rolfsen, *Employers' OSHA Injury Records Sought by Workers' Rights Group*, Bloomberg Env't, Jan. 23, 2018, https://news.bloombergenvironment.com/safety/employers-osha-injury-records-sought-by-workers-rights-group ....................................................................................6

Bryan Menegus, *Amazon's Own Numbers Reveal Staggering Injury Rates at Staten Island Warehouse*, Gizmodo, Nov. 25, 2019, https://gizmodo.com/exclusive-amazons-own-numbers-reveal-staggering-injury-1840025032.......................................................................................... 20

Dep't of Justice, *Exemption 4 After the Supreme Court's Ruling in* Food Marketing Institute v. Argus Leader Media, https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media........................................................................... 21

Dep't of Justice, *President and the Attorney General Issue New FOIA Policy Memoranda*, Jan. 1, 1993, https://www.justice.gov/oip/blog/foia-update-litigation-review-yields-greater-disclosure 24

H. Claire Brown, *How Amazon's On-Site Emergency Care Endangers the Warehouse Workers it's Supposed to Protect*, The Intercept, Dec. 2, 2019, https://theintercept.com/2019/12/02/amazon-warehouse-workers-safety-cyber-monday/ ........ 6, 7

John Cook, *Amazon drops contentious non-compete lawsuit against former AWS exec who left for new job at Smartsheet*, GEEKWIRE, June 17, 2017, https://bit.ly/2xE4SG8 ................................. 9

Letter from Sen. Bernard Sanders & Rep. Ilhan Omar to Loren Sweatt, Deputy Assistant Sec'y of Labor for Occupational Safety & Health, U.S. Dep't of Labor (Dec. 19, 2019), https://www.sanders.senate.gov/download/osha-letter?id=FDC1A968-2319-4052-B1B4-617C1B499050&download=1&inline=file H .............................................................................. 7

NCOSH, *National COSH Announces "Dirty Dozen" Employers*, Apr. 25, 2018, https://www.coshnetwork.org/national-cosh-announces-%E2%80%9Cdirty-dozen%E2%80%9D-employers-0 ................................................................................ 6

NCOSH, *National COSH Announces 2019 "Dirty Dozen" Employers*, Apr. 24, 2019, https://coshnetwork.org/2019-Dirty-Dozen-Release ..................................................... 6

OSHA, *Establishment Specific Injury & Illness Data (OSHA Data Initiative): Amazon*, https://bit.ly/3epmA0e........................................................................................ 1

OSHA, FOIA Report – Q42018 (2018), https://www.osha.gov/sites/default/files/incomingrequests_06012018_12312018.xlsx ........18, 25

Press Release, OSHA, Amazon fulfillment center receives $7K fine, hazard alert letters after OSHA investigates workplace safety complaint**, (Jan. 12, 2016),** https://www.osha.gov/news/newsreleases/region3/01122016 ..................................... 6

Press Release, OSHA, OSHA announces proposed new rule to improve tracking of workplace injuries and illnesses (Nov. 7, 2013), https://www.osha.gov/news/newsreleases/national/11072013................................... 21

Press Release, OSHA, OSHA's final rule to 'nudge' employers to prevent workplace injuries, illnesses (May 11, 2016), https://www.osha.gov/news/newsreleases/national/05112016............. 8

*Public Citizens Sues DOL, OSHA over injury records*, SAFETY & HEALTH, Jan. 24, 2018, http://www.safetyandhealthmagazine.com/articles/16621-public-citizen-sues-dol-osha-over-injury-records................................................................................................... 6

Sharon K. Sandeen, *Through the Looking Glass: Trade Secret Harmonization As A Reflection of U.S. Law*, 25 B.U. J. SCI. & TECH. L. 451 (2019) ........................................................ 8

Violet Ikonomova, *State won't say how much of your money it wanted to give Amazon — that's Gilbert's 'trade secret'*, DETROIT METRO TIMES, Apr. 24, 2018, https://bit.ly/3cD6fUk............... 9

Will Evans, *Behind the Smiles: Amazon's internal injury records expose the true toll of its relentless drive for speed*, REVEAL, Nov. 25, 2019, https://www.revealnews.org/article/behind-the-smiles/ ............................................................................................ 6, 19

-vii -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 18, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom C, located at United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave., 94102, before the Honorable Sallie Kim, the Plaintiffs The Center for Investigative Reporting and Will Evans (together "Plaintiffs" or "CIR") will, and hereby do, oppose the motion filed by Defendant the United States Department of Labor ("Defendant" or "DOL"), Occupational Safety and Health Administration ("OSHA") and cross move the Court for an order granting for summary judgment in Plaintiffs' favor.

Pursuant to Federal Rule of Civil Procedure 56, CIR respectfully asks that this Court issue an order requiring the government to release all records, including any necessary redactions, improperly withheld from the public under the Freedom of Information Act Exemption 4, 5 U.S.C. § 552(b)(4) ("Exemption 4"). This opposition and cross motion is based on this notice of cross motion and motion, the memorandum of points and authorities in support of this opposition and cross motion, the Declarations of D. Victoria Baranetsky ("Baranetsky Decl."), Dr. David Michaels ("Michaels Decl."), Deepa Varadarajan ("Varadarajan Decl."), and Sharon Sandeen ("Sandeen Decl."), and attached exhibits, all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

**RELIEF SOUGHT BY PLAINTIFFS**

Plaintiffs seek an order summarily dismissing Defendant's claims and granting summary judgment in Plaintiffs' favor.

**ISSUES TO BE DETERMINED**

Did Defendant improperly withhold records under Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(4)?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is an action under the FOIA, seeking disclosure of OSHA's 300A Reports ("Work Injury and Illness Reports" "OSHA Reports" or "Form 300As") concerning the multinational technology company, Amazon.com, Inc., LLC ("Amazon"), in particular the aggregate number of its workplace injuries and illnesses. These forms are public records. Amazon, alongside other companies of its size, is required to submit Form 300As to OSHA in order for the agency to ensure compliance with government safety regulations. At the time Amazon submitted the records, OSHA publicly stated it "intends to post the data from these submissions on a publicly accessible Web site" and "[a]ll collected data fields will be made available." Improve Tracking of Workplace Injuries and Illnesses, 81 Fed. Reg. 29,624 (May 12, 2016) (to be codified at 29 C.F.R. §§ 1902, 1904) ("2016 Final Rule"). In addition to being on notice of OSHA's intention to disclose the records, the regulations also require Amazon to post the form in workplaces and share it with employees and representatives upon request. §§ 1904.32(a)(4), (b)(5). For decades, following a 2004 federal district court decision, *see New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp. 2d 394 (S.D.N.Y. 2004), OSHA regularly disclosed Form 300As to the public in response to FOIA requests, including Amazon's Form 300As. *See* OSHA, *Establishment Specific Injury & Illness Data (OSHA Data Initiative): Amazon*, https://bit.ly/3epmA0e (Baranetsky Decl., Ex. 1). Still, Defendant withholds Amazon's Form 300As, claiming they contain "confidential commercial business information" pursuant to Exemption 4, and has moved for summary judgment. But it fails to meet its requisite burden to show that Exemption 4 applies and that a foreseeable harm would result from disclosure.

-1-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

As a threshold issue, DOL has failed to show that disclosing Form 300As meets the "foreseeable harm" requirement, 5 U.S.C. § 552(a)(8)(A), codified by Congress in the 2016 OPEN FOIA Amendment, which requires agencies show disclosure would result in "foreseeable harm" to an interest the relevant exemption seeks to protect. *Id.* Defendant barely discusses this fatal issue, likely because the ongoing disclosure of OSHA Reports (including Amazon's 300As) has created no extant harms, let alone a foreseeable one. Michaels Decl. ¶ 7 (describing the ongoing disclosure and publication of 300A with "virtually no complaints from any employer, including Amazon").

Even more so, DOL falls short of meeting its burden on every prong of Exemption 4. First, OSHA Reports are not "commercial" because a tally of physical injuries and illnesses cannot reasonably be described as *commercial in nature* or serving a *commercial function*. *Id.* at ¶ 9. Second, Form 300As are not "confidential" even according to the Supreme Court's relaxed standard set forth in *Food Mkt'g Inst. v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ("*Argus Leader*"). *See id.* at 2366 (holding that information is "confidential" if "information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy.") The Form 300As are not *customarily* treated as confidential because OSHA, Amazon, and industry leaders routinely made them public, according to agency regulations and established FOIA caselaw. Form 300As are not *actually* confidential because companies are required to post them in the workplace, share them with *all* employees upon request, and are barred from restricting their use. Third, employers did not submit OSHA Reports under an assurance of privacy but instead, under an express assurance of *publicity*, as codified in the 2016 Final Rule, spoiling any further claim of confidentiality. Last, Exemption 4 cannot be used as a pretext to shield embarrassing information.

Because DOL has failed to meet its burden to show withholding was justified, this Court should deny the government's motion for summary judgment and grant CIR's cross motion.

## II. STATEMENT OF FACTS

### A. OSHA Requires Federal Contractors to Submit Form 300As to Ensure Safety.

In 1970, Congress created OSHA, "a national public health agency dedicated to the basic proposition that no worker should have to choose between their life and their job." OSHA, *All About*

*OSHA* at 3, https://www.osha.gov/Publications/all_about_OSHA.pdf (Baranetsky Decl., Ex. 2); *see also* 29 C.F.R. § 1904.0. Because OSHA's mission is to ensure strong worker protections, OSHA requires certain high-risk employers[1] to "record and report work-related fatalities, injuries, and illnesses," § 1904.0, using several recordkeeping forms. *See also All About OSHA* at 17 (stating "[t]racking . . . workplace injuries and illnesses play[s] an important role" in accomplishing agency goals.).[2] This case concerns OSHA Form 300A titled, "Summary of Work-Related Injuries and Illnesses." Form 300A is the most basic of the reports submitted to OSHA; it contains a mere "summary report of all injuries and illnesses," at a given workplace and lists the workplace name and address. 81 Fed. Reg. 29,624. For instance, while OSHA Form 301 lists specific injury incidents, Form 300A only contains aggregate totals of workplace incidents causing injury or illness.[3] Form 300A does not contain personally identifying or commercial information, such as wage data listed in other forms.

In 2016, OSHA began requiring employers to electronically submit Form 300A annually, *see* 81 Fed. Reg. 29,625, along with other compulsory features. Employers are required to post the 300A Forms "in a conspicuous place . . . where notices to employees are customarily posted," ensuring they are not covered by any other material. 29 C.F.R. § 1904.32(b)(5). The Form 300As must be posted for at least three months. *Id.* The employer must also disclose the reports to current and former employees, as well as employee representatives, upon request, *id.*, and must do so by the next business day. *Id.* at § 1904.35. OSHA's assiduous rules involving tracking, publishing, and sharing Form 300As were intended to save lives and thwart circumvention of the law. Michaels Decl. ¶ 5.

---

[1] Specifically, the regulation requires annual electronic submission of work injury reports from establishments with 250 or more employees; establishments with more than 20 but fewer than 250 employees in designated industries; and upon notification by OSHA. 29 C.F.R. § 1904.41(a).

[2] Amazon is subject to OSHA's recordkeeping requirements. § 1904.41(a).

[3] Form 300A lists "numbers of deaths, lost-workday cases, cases resulting in work restriction or transfer . . . as well as the total number of lost or restricted workdays; the classification of cases (injury, skin disorder, respiratory, poisoning, hearing loss, or other illnesses); the number of employees; and the total hours worked." Dkt. No. 1-2 at 80.

-3 -

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

**B.    CIR's FOIA Requests, Administrative Appeals, and Initiation of this Action.**

Plaintiffs submitted three separate FOIA requests to DOL for records related to worker safety at Amazon.  On April 22, 2019, Plaintiffs submitted a FOIA request to OSHA seeking "the entire investigative file for Inspection 1292524.015" of an Amazon facility ("the First Request").  Dkt. No. 1-2 at 3.  On May 13, 2019, Plaintiffs submitted a second FOIA request to OSHA seeking "[a]ll 300A forms provided by Amazon as part of Inspections 1377288.015, 1371360.015, and 1367521.015[,]" which occurred in Ohio ("the Second Request").  Dkt. No. 1-2 at 50.  On May 15, 2019, Plaintiffs submitted a third FOIA Request seeking "[a]ll 300A forms provided by Amazon as a part of . . . Illinois OSHA inspections: 131705.015[,] 1344215.015[,] 1342890.015[,] 1327615.015[, and] 1301593.015" ("the Third Request").  Dkt. No. 1-2 at 70.  Following the commencement of this litigation, DOL "reevaluated" its denial of the First Request, and "released additional information to Plaintiffs."  Dkt. No. 25 at 7 n. 1.  Only the Second and Third Requests are at issue in this litigation. *Id.*

The Second and Third Requests sought a variety of Work Injury and Illness Reports obtained as part of eight separate inspections of Amazon facilities.  Defendant denied the Second Request in part under Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), providing several pages of mostly redacted documents.  Dkt. No. 1-2 at 58-59.  Defendant denied the Third Request in part under Exemption 4 and Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), providing twelve pages of heavily redacted documents.  Dkt. No. 1-2 at 80-92.  Plaintiffs appealed both determinations, Dkt. No. 1-2 at 61-66, 94-105, but Defendant failed to issue a final determination with regards to the appeal within 20 business days as required by FOIA. 5 U.S.C. § 552(a)(6)(A).  Having exhausted all administrative remedies, Plaintiffs then filed a Complaint in this action on September 5, 2019, seeking injunctive and other appropriate relief from this Court.  Dkt. No. 1.

DOL subsequently determined that its policy of disclosing Form 300As in response to FOIA requests was ultimately not consistent with the Supreme Court's new standard for "confidentiality" under *Argus Leader.*  Dkt. No. 26 ¶ 31.  As such, DOL followed its Exemption 4 policy of notifying Amazon of CIR's requests, and Amazon asserted through its attorneys that it treated its Form 300As as confidential.  *Id.* ¶¶ 32-33.  Subsequently, "OSHA determined that portions of the information

-4 -

contained on the OSHA Form 300A records [are] exempt under Exemption 4, and those portions of the OSHA Form 300A records were redacted." *Id.* ¶ 34.  On March 3, 2020, Defendant released nine pages of OSHA Reports to Plaintiffs, redacting *all* of the injury and illness data under Exemption 4 and disclosing only the company name, street address of the facility, and "industry description" of Amazon.  *See* Dkt. No. 26-6.  DOL has abandoned its Exemption 7 arguments.

**C.    Disclosure of Amazon's Form 300As is in the Public Interest.**

**1.    Form 300As Contain Information of Public Interest.**

Publication of Form 300As has beneficial results for companies by creating trust with the public and ensuring a healthy and safe workforce.  Michaels Decl. ¶ 5.  Publication was also "a central tenet" of the 2016 Final Rule's reporting requirements.  *Id.*  OSHA stated in a press release that "public disclosure of work injury data will encourage employers to increase their efforts to prevent work-related injuries and illnesses."  Press Release, OSHA, OSHA's final rule to 'nudge' employers to prevent workplace injuries, illnesses (May 11, 2016), https://www.osha.gov/news/newsreleases/national/05112016 (Baranetsky Decl., Ex. 3).  In the 2016 Final Rule, OSHA explained at great length the benefits that would result from proactive disclosure of the Form 300As with the overall end goal of making workplaces safer, and informing workers, businesses, and investors about safety at particular workplaces as well as industry-wide.  81 Fed. Reg. 29,630.  It further emphasized that publication of 300A data was in furtherance of "increased prevention of workplace injuries and illnesses."  *Id.* at 29,625

Public advocates and members of the public have also called for expanded access to Work Injury and Illness Reports for decades.  Numerous trade groups and professional associations, including the AFL-CIO, New York State Nurses Association, and Service Employees International Union, made comments in support of publishing Form 300As. 81 Fed. Reg. 29,648.  "[T]he National Advisory Committee on Occupational Safety and Health . . . expressed its support" for OSHA's modernization of its system of collection illness and injury data and its plans to publish the collected data.  *Id.* at 29,632.  The disclosure of OSHA Reports has also been championed by consumer watchdog groups and workplace safety experts.  *See, e.g.*, Bruce Rolfsen, *Employers' OSHA Injury*

-5 -

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

*Records Sought by Workers' Rights Group*, Bloomberg Env't, Jan. 23, 2018, https://news.bloombergenvironment.com/safety/employers-osha-injury-records-sought-by-workers-rights-group (Baranetsky Decl., Ex. 4); *Public Citizens Sues DOL, OSHA over injury records*, Safety & Health, Jan. 24, 2018, http://www.safetyandhealthmagazine.com/articles/16621-public-citizen-sues-dol-osha-over-injury-records (Baranetsky Decl., Ex. 5); *see also Pub. Citizen Found. v. Dep't of Labor*, No. 1:18-cv-00117-EGS-GMH (D.D.C. Jan. 19, 2018).

### 2. Workplace Safety at Amazon is a Matter of Public Interest.

Worker safety at Amazon has been a topic of grave public interest in recent years as the company's work force has ballooned and the safety of its workers has suffered. *See, e.g.*, Will Evans, *Behind the Smiles: Amazon's internal injury records expose the true toll of its relentless drive for speed*, Reveal, Nov. 25, 2019, https://www.revealnews.org/article/behind-the-smiles/ (Baranetsky Decl, Ex. 6); H. Claire Brown, *How Amazon's On-Site Emergency Care Endangers the Warehouse Workers it's Supposed to Protect*, The Intercept, Dec. 2, 2019, https://theintercept.com/2019/12/02/amazon-warehouse-workers-safety-cyber-monday/ (Baranetsky Decl, Ex. 7). The National Council for Occupational Safety and Health ("NCOSH") listed Amazon in its "dirty dozen" list of companies with the worst safety records in both 2018 and 2019. *See* NCOSH, *National COSH Announces 2019 "Dirty Dozen" Employers*, Apr. 24, 2019, https://coshnetwork.org/2019-Dirty-Dozen-Release (Baranetsky Decl, Ex. 8); NCOSH, *National COSH Announces "Dirty Dozen" Employers*, Apr. 25, 2018, https://www.coshnetwork.org/national-cosh-announces-%E2%80%9Cdirty-dozen%E2%80%9D-employers-0 (Baranetsky Decl, Ex. 9).

Contributing to the strong public interest in worker safety at Amazon are several recent high-profile investigations into its labor practices as well as fines issued by OSHA for various violations, including record-keeping regulations. In 2015, following an employee complaint alleging numerous safety hazards and record-keeping violations in New Jersey fulfillment center, OSHA investigated and issued a fine on Amazon. Press Release, OSHA, Amazon fulfillment center receives $7K fine, hazard alert letters after OSHA investigates workplace safety complaint, (Jan. 12, 2016),

-6-

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

https://www.osha.gov/news/newsreleases/region3/01122016 (Baranetsky Decl, Ex. 10). OSHA has received and investigated multiple other complaints about Amazon's failure to keep accurate records. *See* H. Claire Brown, *How Amazon's On-Site Emergency Care Endangers the Warehouse Workers it's Supposed to Protect*, THE INTERCEPT, Dec. 2, 2019, https://theintercept.com/2019/12/02/amazon-warehouse-workers-safety-cyber-monday/ (two recordkeeping violations) (Baranetsky Decl., Ex. 7).

Because both Form 300As and Amazon's labor practices are topics of intense public interest, Amazon employees and the public at large have called on the company to be more transparent about worker health and safety. Annie Palmer, *'Amazon is not taking care of us': Warehouse workers say they're struggling to get paid despite sick leave policy*, CNBC, Apr. 8, 2020, https://www.cnbc.com/2020/04/08/amazon-warehouse-workers-say-they-struggle-to-get-paid-despite-sick-leave-policy.html (Baranetsky Decl., Ex. 11); H. Claire Brown, *How Amazon's On-Site Emergency Care Endangers Warehouse Workers*, THE INTERCEPT (Baranetsky Decl, Ex. 7). Moreover, in late 2019, two Members of Congress wrote a letter asking Amazon to release its Form 300As, highlighting its "egregious safety lapses" and citing Plaintiffs' reporting. Letter from Sen. Bernard Sanders & Rep. Ilhan Omar to Loren Sweatt, Deputy Assistant Sec'y of Labor for Occupational Safety & Health, U.S. Dep't of Labor (Dec. 19, 2019), https://www.sanders.senate.gov/download/osha-letter?id=FDC1A968-2319-4052-B1B4-617C1B499050&download=1&inline=file H (Baranetsky Decl, Ex. 12).

### D. Form 300As Were Intended to Be Made Public.

The changes made to OSHA's recordkeeping requirements in the past decade were made with the express intent of making the data collected in Form 300A publicly available. Michaels Decl. ¶¶ 4-5. The agency announced it was exploring the possibility of publicizing this data as early as 2010, Modernization of OSHA's Injury and Illness Data Collection Process, 75 Fed. Reg. 24,505 (May 5, 2010) (to be codified at 29 C.F.R. § 1904), and stated it intended to publicize OSHA Report data as early as 2013. Improve Tracking of Workplace Injuries and Illnesses, 78 Fed. Reg. 67,254 (Nov. 8, 2013) (to be codified at 29 C.F.R. §§ 1904, 1952). In the 2016 Final Rule, OSHA codified its plans to publish Form 300As online in their entirety. 81 Fed. Red. 29,632. The Rule stated

unequivocally that OSHA would make "[a]ll collected data fields" from 300A Forms available on the public OSHA website in "a searchable online database," *id*. at 29,625, and discussed seven discrete societal benefits of publication. *Id.* at 29,630-31; *see also supra* Section I.C.1; Press Release, OSHA, OSHA's final rule to 'nudge' employers to prevent workplace injuries, illnesses (May 11, 2016), https://www.osha.gov/news/newsreleases/national/05112016 (stating publication would provide workers, researchers, the public, and workplace safety regulators with "critical information" about "dangerous workplaces," (Baranetsky Decl., Ex. 3); Michaels Decl. ¶ 5 (listing benefits).

**E.    Overbroad Assertions of Commerciality and Trade Secrecy by Technology Companies is a Growing Problem.**

In recent years, large technology companies, such as Amazon have begun asserting confidentiality or trade secrecy to thwart transparency.  Varadarajan Decl. ¶ 5.  These overzealous claims have been criticized as contrary to public policy by commentators and courts.  *See id.* ¶ 10 (describing reforms to minimize such trade secrecy claims); Sharon K. Sandeen, *Through the Looking Glass: Trade Secret Harmonization As A Reflection of U.S. Law*, 25 B.U. J. SCI. & TECH. L. 451, 473 (2019) (stating "U.S. law has long recognized that it is not good public policy to tie-up information too much, particularly when there is a public interest in the information") (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION, § 39 (AM. LAW INST. 2019)) (Baranetsky Decl., Ex. 13); *Waymo LLC v. Uber Techs., Inc.*, C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) (disapproving of overbroad trade secrecy claims on policy grounds).

This Court has expressed opprobrium about this trend in several recent cases involving such claims.  *See*, *e.g.*, *Swarmify, Inc. v. Cloudflare, Inc.*, C 17-06957 WHA, 2018 WL 1142204, at *3 (N.D. Cal. Mar. 2, 2018); *Waymo LLC v. Uber Techs., Inc.*, C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017).  In *Waymo*, this Court criticized Waymo's "pattern of claiming broad swaths of solutions to general competing considerations and engineering trade-offs" as trade secrets.  *Id.*; *see also Citcon USA, LLC v. RiverPay Inc.*, 18-CV-02585-NC, 2019 WL 2603219, at *2 (N.D. Cal. June 25, 2019) (refusing to enjoin the use of "limitless swath[s] of information" as trade secret misappropriation, and requiring "sufficient particularity" to allege trade secrecy).  This Court has also disapproved of similar maneuvers in the FOIA Exemption 4 context, expressing

concern about "how prolifically companies claim confidentiality, including over documents that, once scrutinized, contain standard fare blather and even publicly available information." *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 833 (N.D. Cal. 2019) ("*ASBL*").

Amazon in particular has been known to wield this tactic with exceptional tenacity. *See, e.g.*, John Cook, *Amazon drops contentious non-compete lawsuit against former AWS exec who left for new job at Smartsheet*, GEEKWIRE, June 17, 2017, https://bit.ly/2xE4SG8 (explaining Amazon filed a lawsuit against a former employee based on a non-compete clause, surprising the startup community as "general bullying behavior," which other courts have criticized) (Baranetsky Decl, Ex. 14); Violet Ikonomova, *State won't say how much of your money it wanted to give Amazon — that's Gilbert's 'trade secret'*, DETROIT METRO TIMES, Apr. 24, 2018, https://bit.ly/3cD6fUk (explaining Amazon's controversial position that proposals from American cities to host Amazon headquarters are trade secrets) (Baranetsky Decl., Ex. 15).

## III.    ARGUMENT

### A.    The Freedom of Information Act and the Standard of Review

FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempt[] under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (internal citations and quotation marks omitted).  The agency invoking an exemption "bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).  Exemptions are interpreted narrowly. *Id.*  While the agency may meet its burden with declarations that "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption," *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quotation omitted), conclusory and generalized allegations are insufficient to support an agency's decision to withhold. *See Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011).

-9-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

**B.**     **CIR is Entitled to Summary Judgment Because the Government Has Improperly Withheld Form 300As Under Exemption 4.**

Under FOIA Exemption 4, an agency may only withhold information if it proves disclosure would release (1) trade secrets or commercial or financial information, that is (2) obtained from a person,[4] and (3) is privileged or confidential.  5 U.S.C. § 552(b)(4).  The purpose of this exemption is to "balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information."  *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768–69 (D.C. Cir. 1974).  OSHA does not and cannot meet its burden here.  Form 300As are not commercial or financial information and they are not privileged or confidential[5]—even under the "significantly expand[ed]" standard for confidentiality under *Argus Leader*.  Dkt. No. 25 at 20.

**1.**     **Form 300As are improperly withheld under Exemption 4 because they are not commercial.**

The government asks this Court to adopt an outlandish new test for "commercial" that would be so expansive it would encompass nearly all records touched by Amazon, rendering the test for FOIA Exemption 4 all but meaningless.  OSHA's Form 300As are simply not "commercial" because they contain no commercial information and are required for a government purpose, Michaels Decl. ¶ 9, which the government admits in part.  Dkt. No. 25 at 15 (citing *Pub. Citizen v. FDA*, 704 F.2d at 1290) (admitting commercial pertains to "commercial *operations*" or "the *income-producing aspects*" of the business) (emphasis added).  While the statutory language of FOIA does not define "commercial," courts "have consistently held" that the term "commercial. . . in the exemption [4 context] should be given [its] ordinary meaning[]" which is circumscribed.  *Pub. Citizen v. FDA*, 704 F.2d at 1290; *accord Watkins*, 643 F.3d at 1194.  Unlike the "trade secret" component of

---

[4] CIR does not contest that the records were obtained from a person.  *See* Dkt. No. 25 at 19.

[5] The government concedes that Work Injury and Illness Reports are not trade secrets.  *See generally* Dkt. No. 25 at 15 n. 3.  To the extent Amazon and/or the government does still assert this position, Form 300As cannot qualify as trade secrets because courts have limited the definition of trade secrets under FOIA and these records cannot reasonably be described as revealing a valuable plan, formula, process or device; they merely describe injury and illness statistics of the company.  *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1289 (D.C. Cir. 1983) (stating records must be related to "the productive process itself"); *see also Citizens Comm'n on Human Rights v. Food & Drug Admin., Eli Lilly & Co.*, No. 92-CV-5313, 1993 WL 1610471 at *7 (C.D. Cal. May 10, 1993).

Exemption 4, which can be defined by reference to federal trade secrecy laws, Sandeen Decl. ¶ 21, "commercial" is defined by case law and statutory interpretation. *Id.* at ¶ 26. As explained by the courts, "commercial" information under Exemption 4 only applies to information that "in and of itself," is actually "*of a commercial nature*" or serves "*a commercial function*[,]" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (citation omitted) (emphasis added), and not *any* information *related to* a business. *Cf.* Dkt. No. 25 at 14; *see also Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978) ("'Commercial' surely means…dealing with commerce."); *Chi. Tribune Co. v. Fed. Aviation Admin.*, 97-cv-2363, 1998 WL 242611, at *2 (N.D. Ill. May 7, 1998) ("Generally, information is commercial if it relates to commerce or trade or is assembled primarily for profit").[6] Neither of these two conditions apply here: Form 300As are not of a commercial nature nor do they serve a commercial function.

(a)     **Form 300As are not of "a commercial nature."**

Courts have held records are "of a commercial nature" only where they are directly and logically related to the commercial activity of a company, *i.e.*, the income-producing aspects of a business. *See, e.g.*, *Racal–Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F.Supp. 4, 6 (D.D.C. 1981) ("general selling prices, inventory balances, profit margins, purchase activity, freight charges, costs of goods sold, and customer names"); *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C. Cir. 1986) (customer lists); *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 75 (D.C. Cir. 1974) (loan application for business). The Ninth Circuit has applied this interpretation to logically related records. *Watkins*, 643 F.3d at 1194. In *Watkins*, the court found documents detailing the *importation process* of *goods* was "commercial" because they "disclose[d] *intimate aspects of an importers business* such as supply chains and fluctuations of demand for *merchandise*." *Id.* at 1195 (emphasis

---

[6] "Commercial" is circumscribed even in circumstances where it is broader in scope than in the FOIA context, such as in the Commerce Clause context. *See Wickard v. Filburn*, 317 U.S. 111, 124 (1942) (noting broad scope of Commerce Clause); *United States v. Lopez*, 514 U.S. 549, 559–60 (1995) ("an activity must…'substantially affect' interstate commerce in order to be within Congress' [Commerce Clause] power" no matter "how broadly one might define those terms"); *United States v. Morrison*, 529 U.S. 598, 613 (2000) ("thus far in our Nation's history our cases have upheld Commerce Clause…only where that activity is economic in nature") (citing *id.*)

added). Similarly, in *Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188 (S.D. Cal. 2002), the court found that information about a Native American tribe's water supply was commercial because the well water was "an article of commerce." *Id.* at 1195 (citation omitted) (stating records are commercial when they are "commercial or financial in nature," and pertain to commercial *goods* or *finances*); *see also Dow Jones Co. v. Fed. Energy Reg. Comm'n*, 219 F.R.D. 167, 176 (C.D. Cal. 2003) (records about "business decisions" are commercial).

In contrast, courts have repeatedly held that records too attenuated from the commercial aspects of a business, such as employee records, are not commercial in nature. *See, e.g.*, *Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 103 (D.D.C. 2013) (information provided by pharmaceutical companies to the HHS, consisting of name, title, and responsibilities of any person determined to be ineligible person, is not commercial in nature); *Getman v. NLRB*, 450 F.2d 670, 673 (D.C. Cir. 1971) ("a bare list of names and addresses of employees which employers are required by law to give the [agency] . . . cannot be fairly characterized as . . . 'financial' or 'commercial' information"); *Nat'l Bus. Aviation Ass'n v. FAA*, 686 F.Supp.2d 80, 86–87 (D.D.C. 2010) (list of aircraft registration numbers was not commercial).

Especially analogous to this case, one court plainly stated that records involving injuries that occurred in a workplace were not sufficiently related to the business to be "of a commercial nature." *Chi. Tribune Co. v. FAA,* No. 97 C 2363, 1998 WL 242611 at *3 (N.D. Ill. May 7, 1998) (records pertaining to in-flight medical emergencies did not have a sufficiently "direct relationship with the operations of a commercial venture" to be commercial). In such cases, courts have clarified that while records containing corporate information could be used to gain some "insight into the nature of a company's business dealings," that does "not convert the [records] into commercial information." *Nat'l Bus. Aviation Ass'n*, 686 F.Supp.2d at 86–87.[7]

---

[7] The Government cites to a Tenth Circuit case which found employee information was commercial, but that case is distinguishable because in that case, the employee information at issue was sold to the agency. *See Brown v. Perez*, 835 F.3d 1223, 1231 (10th Cir. 2016) ("Because the redacted information is part of the data that Elsevier compiles, maintains, and ultimately sells *as a product*, it is safe to say that Elsevier has a "commercial interest" in that information.") (emphasis added).

-12-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Here, none of the records reveal *any* information about *commercial* activities of Amazon and thus are not commercial in nature. These records do not speak to Amazon's online services. They do not list Amazon's "general selling prices, inventory balances, profit margins, purchase activity, freight charges, costs of goods sold, and customer names," *Racal–Milgo*, 559 F.Supp. at 6, as in other cases. Instead, OSHA Reports contain a tally of Amazon's workers' on-site injuries and illnesses, information which is not "of a commercial nature." *See Pub. Citizen v. HHS*, 975 F. Supp. 2d at 103. This relationship is too attenuated for these records to be considered commercial information.

While the government tries to argue that the injuries and illnesses in the workplace "are not randomly connected to the operations of commercial entity but [] are *caused* by those commercial operations" Dkt. No. 25 at 18, that overstatement is based on a logical fallacy. The government surely knows that "[c]orrelation is not causation." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 173 (2003) (Kennedy, J., concurring). While a heart attack on a factory floor *may* be connected to work operations, it need not be. While brain hemorrhage *may* occur in the workplace, it is certainly not *caused* by the employer. Sandeen Decl. ¶ 25 (describing the need for a causal link in trade secret law for records to be considered confidential). Just as the in-flight medical emergency information discussed in *Chicago Tribune* did not have a sufficiently "direct relationship with the operations of a commercial venture," No. 97 C 2363, 1998 WL 242611 at *3, neither does Amazon's in-warehouse injury information have a sufficiently direct relationship to its commercial operations.

Moreover, the relationship the government tries to draw is based another illogical step that is too attenuated. It first argues that Amazon's labor *causes* the injuries, and then claims the injuries are directly related to the company's profit. Amazon's second grizzly implication is that it has a "commercial" interest in Form 300As because the injury data informs the company's financial success, impacting "worker's compensation [costs], employee absences, and short- and long-term disability and assist Amazon in measuring economic effectiveness in maximizing efficiency." Dkt. No. 25 at 16. DOL does not explain *how* Form 300As impact worker's compensation or disability costs and admits that the number of *work injuries* doesn't amount to a bottom-line *dollar amount* in Amazon's budget, but still it argues the number *may* "*tangentially*" be related. Dkt. No. 25 at 17.

-13-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Courts have chided such capacious interpretations. Even where courts will consider a "commercial interest," they require the records be "instrumental" to a business. *Nat'l Ass'n of Home Builders*, 309 F.3d at 38. There is no commercial interest in the number of heart attacks on a factory floor, but even so, it certainly is not "instrumental" to Amazon's business. Instead, the number is instrumental to public safety, as explained in OSHA's regulations. Occupational Injury and Illness Recording and Reporting Requirements, 66 Fed. Reg. 6,058 (Jan. 19, 2001) (to be codified at 29 C.F.R. §§ 1904, 1952). The number of wrist injuries, and broken bones is not a *commercial statistic*, involving corporate *profit* – but a number cataloguing human injuries, where human welfare is the bottom line.

### (b) Form 300As do not serve "a commercial function."

Documents serving a "commercial function" is an even more limited category, relating only to records documenting the finances of a company, usually involving concrete numbers. For instance, courts have held that information about revenue, service pricing, and checking accounts are commercial where records serve a business function, such assisting in compiling a budget or financial statement. *See, e.g.*, *Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001); *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 47 (1st Cir. 2015). Generally, information about personnel or employees does not serve a sufficiently commercial function to qualify as commercial. *See, e.g.*, *id.* (organization's personnel policies lacked a commercial function.).

Here, DOL admits that the primary purpose of these records is to serve a government function, not a commercial one. Dkt. No. 25 at 17 ("the presentation of this data in the Form 300A is a function of OSHA regulatory requirements"); *see also* Michaels Decl. ¶ 5 ("The purpose of OSHA's collection workplace injury and illness is a regulatory, government one"). DOL obfuscates this truth by stating that Amazon uses the data for its own secondary purposes "independent of the governmental requirement." *Id.* It then invents a test out of whole cloth that would find that "anything that 'relates to commerce'" suffices for a "commercial function" under FOIA Exemption 4. *Id.* at 16. In proposing another novel test, the government relies on piecemeal language from

non-FOIA cases or non-Exemption 4 cases to argue records must merely "relate to" commerce for purposes of Exemption 4. *See generally* Dkt. No. 25 at 16. For instance, the Government cites to *Rodriguez-Valencia v. Holder*, 652 F.3d 1157, 1159 (9th Cir. 2011) to state that FOIA must be "construed broadly." Dkt. No. 25 at 16. But that case interpreted the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(R), which must be construed broadly, inapposite to FOIA exemptions.[8] The agency also cites to *Morales v. Trans World Airlines*, 504 U.S. 374, 383–84 (1992), another case to argue "relates to" should be construed broadly—but this case also does not involve FOIA. *Id.*

Instead, the language of FOIA states records must be "commercial," which courts have interpreted to mean *more than* "related to" commerce—they must be directly tied to a commercial function. Over-classifying documents as "commercial in function" under FOIA has been met with censure by other courts. In *Public Citizen v. HHS*, Pfizer urged a "broad[] construction of Exemption 4," by stating that "a company has a 'commercial interest' in all records that relate to every aspect of the company's trade or business,'" an argument the court found "plainly incorrect." 975 F. Supp. 2d 81, 100 (D.D.C. 2013) (records submitted to HHS) for compliance. Indeed, the D.C. Circuit has explained that "the reach of the exemption for 'trade secrets or commercial or financial information' is not necessarily coextensive with the existence of competition in any form." *Wash. Research Project, Inc. v. U.S. Dep't of Health*, 504 F.2d 238, 244 (D.C. Cir. 1974). Where records exist to serve a government function—to ensure worker safety—and are tangentially related to commercial purposes, that is not enough. *Nat'l Bus. Aviation Ass'n*, 686 F.Supp.2d at 86–7. As the D.C. Circuit has explained, "[n]ot every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Pub. Citizen v. FDA*, 704 F.2d at 1290.

### 2. Form 300As are improperly withheld under Exemption 4 because they are not confidential.

In *Argus Leader*, the Supreme Court held that information is "confidential" under Exemption 4 "where commercial or financial information is both customarily and actually treated as private by

---

[8] Courts have repeatedly stated that FOIA exemptions must be construed narrowly. *See Milner v. Department of the Navy*, 562 U.S. 562, 565 (2011) (stating FOIA's exemptions are "'exclusive' and must be 'narrowly construed'") (quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973); *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).

-15-

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

its owner and provided to the government under an assurance of privacy." 139 S. Ct. at 2366. An agency must meet both the "actually" and "customarily" prongs of this test.[9] *See Ctr. for Investigative Reporting v. U.S. Cust. and Border Protec.*, No. 1:18-cv-02901-BAH, 2019 WL 7372663 at *12, n. 11 (D.D.C. Dec. 31, 2019) (treating customarily and actually as separate analyses and citing DOJ OIP Guidance which discusses separate forms of evidence for both). While *Argus Leader* left open the question whether an assurance of privacy was required to show confidentiality, 139 S. Ct. at 2363, some government defendants have "acknowledge[d] [the]…need to show…some assurance to the submitters." *Ctr. for Investigative Reporting*, No. 1:18-cv-02901-BAH, 2019 WL 7372663, at *14 (quotation marks omitted). Nevertheless, it is a basic rule that "[i]f an individual discloses [his or her information] to others who are under no obligation to protect the confidentiality . . . or otherwise publicly discloses the secret, [his or her] property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also* Sandeen Decl. ¶ 6 (describing extinguished property rights after disclosure).

Here, DOL has not met its burden to show that Amazon's Form 300As are confidential. First, these records are customarily made public by Amazon, the government, other industry leaders. Second, they are not actually treated as confidential by Amazon because all companies subject to the regulations, including Amazon, are required to make this information available to current employees, former employees, and their representatives. Third, and perhaps most deleterious, OSHA announced that it would publish these records online, making any expectation of privacy unreasonable.

**(a)    Amazon Form 300As are not customarily treated as confidential.**

To be confidential under *Argus Leader*, information must be "customarily kept private." 139 S. Ct. 2356, 2363 (2019). OSHA's Form 300As are not "customarily" treated as confidential by Amazon, the industry as a whole, or the government. First, OSHA Forms are not customarily treated

---

[9] DOL states that the appropriate test for confidentiality is set forth in *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879–80 (D.C. Cir. 1992). While *Argus Leader* cited *Critical Mass* approvingly, that case focuses only on the *customarily* prong, *Critical Mass*, 975 F.2d at 879, whereas *Argus Leader* considers both "customarily *and actually*." 139 S. Ct. at 2366 (emphasis added). The Court's inclusion of those two words underscores their independent meaning, otherwise they would be redundant.

as confidential by Amazon itself, because the company is required to post this information for *all* who walk into a workplace to see, and is required to share information with former and current employees as well as their representatives upon request. *See infra* Section III.2.C. These obligations, to post injury and illness data in a conspicuous location and share them upon request, have been in place for decades, making disclosure a longstanding custom for Amazon. 66 Fed. Reg. 6,057 (requiring employers provide employees with access to illness and injury logs upon request).

Second, Form 300As are not customarily treated as private on an industry-wide level. As the Supreme Court suggested and the DOJ has acknowledged, industry standards and competitor practices are probative of whether information is customarily treated as confidential under *Argus Leader. ASBL*, 411 F. Supp. 3d 824, 832 (N.D. Cal. 2019) (stating that plaintiffs could demonstrate information was not customarily confidential by "point[ing] to other competitors who release the information"); *Argus Leader*, 139 S. Ct. at 2363 (information was "customarily kept private" because, on an industry-wide level, FMI's "retailers customarily d[id] not disclose…data"); DOJ, *Exemption 4 After* Argus Leader ("as *Argus Leader* itself demonstrates, industry representatives can provide the necessary information regarding the customary treatment") (Baranetsky Decl., Ex. 16).

According to the 2016 Final Rule, "[m]any corporations now voluntarily report their worker injury and illness rates in annual 'Sustainability Reports[,]' in order to show investors, stakeholders, and the public that they are committed to . . . workplace safety and health." 81 Fed. Reg. 29,630. Today, large companies continue to publish this data—often duplicative to Form 300A data—not only in sustainability reports but also online. *See, e.g.*, Unilever, *Sustainable Living: Monitoring Our Safety Performance*, https://www.unilever.com/sustainable-living/enhancing-livelihoods/fairness-in-the-workplace/building-a-safer-business/monitoring-our-safety-performance/ (Baranetsky Decl., Ex. 17); Sony, *Sustainability Reporting: Global Workplace Injury Statistics*, Aug. 20, 2019, https://www.sony.net/SonyInfo/csr_report/employees/ohs/injury_statistics.html (Baranetsky Decl., Ex. 18). Ongoing publication, especially on company websites, shows a custom of publicity, not confidentiality.

-17 -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Lastly, Amazon's Form 300As have not customarily been treated as confidential by the government, as OSHA has made this data available to the public for decades. OSHA's custom of disclosing Form 300As through FOIA started in 2004 after *New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp 2d 394 (S.D.N.Y. 2004) and since 2009 "OSHA has published specific injury and illness data from the OSHA Data Initiative [("ODI")] on its public website," "easily available and accessed by the public." Michaels Decl. ¶ 7. Today, anyone can go online, and easily find OSHA 300As from prior years containing Amazon's statistics. OSHA, FOIA Report – Q4 2018 (2018), https://www.osha.gov/sites/default/files/incomingrequests_06012018_12312018.xlsx (Baranetsky Decl., Ex. 19).

Additionally, other agencies within the DOL have also long posted similar workplace injury data on their public websites. The Mine Safety and Health Administration has, for example "been collecting similar data . . . for many years and has posted data on the web for more than fifteen years." Tracking of Workplace Injuries and Illnesses, 84 Fed. Reg. 387 (Jan. 25, 2019) (to be codified at 19 C.F.R. § 1904) (citation omitted). The Federal Railroad Administration and the Federal Aviation Administration similarly post "accident investigation reports" and "reports about aviation accidents" respectively. *Id.*; *see also* Michaels Decl. ¶ 10. These longstanding practices all show Form 300As are not *customarily* treated as secret.

### (b) Amazon Form 300As are not actually treated as confidential.

According to agency regulations, Form 300As are not *actually* treated as secret within Amazon. *Cf.* Dkt. No. 25 at 20. Amazon is required to make Form 300As available through two separate methods and is forbidden from implementing enforceable restrictions on the employees' use of these reports. Together, these regulations and disclosures defeat any argument that the Form 300As are actually treated as confidential.

Form 300As must be posted annually, "in a conspicuous place," for at least three months. 29 C.F.R. § 1904.32(a). One of the government's declarants notes that Form 300A "is posted in an area that is not accessible to the public," Dkt. No. 27 ¶ 5, but that does not mean that the record is not public. Since the posting must be done in a "conspicuous" place for at least a quarter of the calendar

-18-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

year, by design the log is visible to *most* if not all employees, and anyone else who walks into that area of the company, including contractors, partners, or members of the public. 66 Fed. Reg. 6,058.

Companies are also required to provide copies of OSHA Reports to "employees, former employees" and their representatives, and must do so "by the next business day" following the request. 29 C.F.R. § 1904.35(b)(2). Contrary to the government's statement that "any disclosure is to, at most, a small subset of all employees," Dkt. No. 25 at 22, the regulations require much broader disclosure—even a *former* employee or a person designated as *representative* of a former employee may request prompt access, 29 C.F.R. §1904.35(b)(2), and Amazon has no discretion to deny such a request or the use of the disclosure. *Id.* Thus, members of the public who have not worked at Amazon for years are still entitled to Form 300As. Will Evans, *Behind the Smiles: Amazon's internal injury records expose the true toll of its relentless drive for speed*, REVEAL, Nov. 25, 2019, https://www.revealnews.org/article/behind-the-smiles/ (Baranetsky Decl. Ex. 6). Since, according to the Supreme Court, "it is hard to see how information could be deemed confidential if its owner shares it freely," *Argus Leader*, 139 S. Ct. at 2363, the unrestricted sharing of this information with employees and representatives undoes any plausible claim of confidentiality. *See also* Sandeen Decl. ¶ 12 (describing loss of legal protection for disclosed information).

Still, Defendant cites to a declaration from an Amazon representative that argues that the Form 300As are actually confidential because Amazon has taken steps to maintain the confidentiality of the reports. Dkt. No. 25 at 20. It emphasizes that Amazon provides the 300A forms to employees, former employees, and their representatives "with an instruction or expectation that they be kept confidential," Dkt. No. 25 at 23, but this "expectation" is contrary to, if not in violation of, OSHA's regulation. 66 Fed. Reg. 6,058 (an "employer *may not* require an employee…to agree to limit the use of the records as a condition of viewing or obtaining the records") (emphasis added).

DOL then tries to obfuscate that OSHA's regulation prohibits Amazon from restricting employee use of any disclosed Form 300A, Dkt. No. 25 at 22, by castigating Plaintiffs'

newsgathering.[10]  DOL describes Plaintiffs' newsgathering of Form 300A, as an "attempt to exploit the employee record-sharing regulations to secure this information through the back door." *Id.* at 23 (citation omitted).  This characterization of Plaintiffs' journalistic work is not only unconstitutionally unfounded,[11] but also dangerously close to offending Plaintiffs' constitutionally protected press rights.[12]  Former and current employees have shared OSHA Reports with other members of the news media[13] for public distribution not only in line with First Amendment principles,[14] but also in alignment with OSHA's own regulations that advocate for transparency.  66 Fed. Reg. 6,058.

OSHA's regulations explain that prohibiting companies from restricting the use of Form 300As exists to thwart any "chilling effect" on "use of the records . . . for health and safety purposes," Dkt. No. 25 at 23, and DOL fails to consider that sharing Form 300As with the press is consistent with these purposes.  The 2016 Final Rule emphasized that "[p]ublication of worker injury and illness data" will benefit employees through "several mechanisms," listing seven health and safety justifications for publication.  81 Fed. Reg. 29,630–31.  OSHA itself determined in 2016 that publication of Form 300A would promote health and safety, aiding "researchers . . . and workplace safety and health consultants" in their work to make workplaces safer.  *Id.* at 29,685.  The fact that OSHA abandoned its plans to publish this data in 2017, 84 Fed. Reg. 391, does not diminish the well-researched benefits of publication.

---

[10] Through their reporting, Plaintiffs informed Amazon employees that they had the right to request Form 300As under OSHA regulations, and that CIR was currently collecting this lawfully obtained information in order to report on labor conditions at Amazon.  Will Evans, *Behind the Smiles*, REVEAL, Nov. 25, 2019.

[11] It is well-established that the government cannot punish the publication of lawfully obtained information.  *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 99 (1979).  Thus, "a journalist is free to seek out sources of information not available to members of the general public…and that government cannot restrain the publication of news emanating from such sources." *Pell v. Procunier*, 417 U.S. 817, 834 (1974).

[12] "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated," *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972), which is why this Circuit has expressly taken great strides in protecting various forms of newsgathering.  *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1190 (9th Cir. 2018).

[13] *See, e.g.*, Bryan Menegus, *Amazon's Own Numbers Reveal Staggering Injury Rates at Staten Island Warehouse*, GIZMODO, Nov. 25, 2019, https://gizmodo.com/exclusive-amazons-own-numbers-reveal-staggering-injury-1840025032 (Baranetsky Decl., Ex. 20).

[14] *Id.*

### (c) OSHA's assurance of publicity spoils Amazon's assurance of privacy claim.

In *Argus Leader*, the Court stated that information submitted to the government may "*lose its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private.*" 139 S. Ct. at 2363 (emphasis in original). Not only did OSHA give no assurance of privacy in this case, but forewarned companies and the public that OSHA Report data would be made public as early as 2013. *See* Press Release, OSHA, OSHA announces proposed new rule to improve tracking of workplace injuries and illnesses (Nov. 7, 2013), https://www.osha.gov/news/newsreleases/national/11072013 (announcing proposed rule and stating "OSHA plans to eventually post the data online") (Baranetsky Decl., Ex. 3). This position was codified in the 2016 Final Rule, in which OSHA clearly stated its plans to proactively publish Form 300As online in their entirety. 81 Fed. Red. 29,632.[15]

Amazon submitted the Form 300As at issue on notice of these policies and *before* the *Argus Leader* decision, at a time when "it was OSHA's policy to release individual Form 300A records in response to FOIA requests." Dkt. No. 25 at 26 n. 10; *see also* Michaels Decl. ¶ 6. Having been well-informed that Form 300As would be made public for nearly seven years, and having submitted these forms while it was OSHA's practice to disclose them, Amazon cannot earnestly claim it received *any* assurance of privacy, and OSHA cannot claim it provided any.

While DOL argues that an assurance of privacy is not required since "Amazon was required to provide the Form 300As as part of the OSHA investigations and . . . there was no reason to anticipate disclosure," Dkt. No. 25 at 24, DOL cites to *no authority* for that proposition. *Id.* To the contrary, courts have recently required an assurance of privacy or assumed it was required. *Tokar v. U.S. Dep't of Justice*, CV 16-2410 (RC), 2019 WL 6910142 at *4 n. 7 (D.D.C. Dec. 19, 2019); *Ctr.*

---

[15] While Amazon submitted these forms before the 2019 rulemaking, which "takes the position that [Form 300A] data are exempt from public disclosure under FOIA," 84 Fed. Reg. 383, OSHA even acknowledges in the subsequent rulemaking "a court could require OSHA to release" *even the more granular Forms 300 and 301* in response to the "a FOIA request," further noting that "[t]his risk is not insignificant," as multiple courts have ordered such disclosure. 84 Fed. Reg. 400 (citing *New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp 2d 394 (S.D.N.Y. 2004); *Finkel v. U.S. Dep't of Labor*, No. 05-55255, 2007 WL 1963163 (D.N.J. June 29, 2007)).

-21 -

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

*for Investigative Reporting v. U.S. Cust. & Border Protec.*, CV 18-2901 (BAH), 2019 WL 7372663, at *14 (D.D.C. Dec. 31, 2019). The DOJ *itself* has advised that "agencies should as a matter of sound administrative practice consider whether the context in which the information was provided to the agency reflects such an assurance." Dep't of Justice, *Exemption 4 After the Supreme Court's Ruling in* Food Marketing Institute v. Argus Leader Media, https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media (Baranetsky Decl., Ex. 16). Where there is no assurance of confidentiality, but an express assurance of publicity, and the government has released records in the past, it cannot claim confidentiality.

### (d) Claiming Form 300As are confidential as a pretense is prohibited under Exemption 4.

Given OSHA's Form 300As are neither actually confidential nor customarily kept confidential or submitted under an assurance of privacy, it appears that Amazon's objections may be a pretense. *Cf. United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 564 (D.C. Cir. 2010) ("Exemption 4 does not guard against mere embarrassment in the marketplace or reputational injury"); *Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700, at *2 (N.D. Cal. Nov. 24, 1993) (although "information could damage plaintiff's reputation, this is not the type of competitive harm protected by the confidential commercial information exemption"). Here, the repeated investigations into Amazon's safety and recordkeeping practices, by OSHA and others, *see supra* Section II.C.2, as well as the increased claims of confidentiality and now abandoned Exemption 7 justifications, all suggest that this withholding may be driven by mere embarrassment. But Exemption 4 does not apply where injury "might flow from . . . embarrassing publicity," *Pub. Citizen v. FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983), and withholding is unjustified on that basis.

### C. CIR is Entitled to Summary Judgment Because the Government Has Failed to Meet the Foreseeable Harm Standard

In 2016, the OPEN FOIA Amendment added heightened requirements for withholding under FOIA, called the "foreseeable harm" standard. 5 U.S.C. § 552(a)(8)(A). The foreseeable harm standard requires that 1) an agency alleges that a foreseeable harm will result from disclosure, and 2) that the harm will result to an interest the relevant exemption seeks to protect. *Reporters Comm.*

*for Freedom of the Press v. FBI*, CV 15-1392 (RJL), 2020 WL 1324397, at *8 (D.D.C. Mar. 20, 2020); *see also Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019). The agency must "connect the harms in a meaningful way to the information withheld." *Rosenberg v. U.S. Dep't of Def.*, 17-CV-00437 (APM), 2020 WL 1065552, at *10 (D.D.C. Mar. 5, 2020).

Even if Exemption 4 applies in this case, DOL has failed to meet its burden to demonstrate a foreseeable harm. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019). While there is sparse case law regarding the foreseeable harm standard in the context of Exemption 4, it has been firmly established that the foreseeable harm standard operates as an additional and independent hurdle. *Ctr. for Investigative Reporting v. Dep't of Labor*, No. 4:19-cv-1843-KAW 2019 WL 6716352, at *14, 424 F.Supp.3d 771 (N.D. Cal. Dec. 10, 2019) ("even if information falls within the scope of a discretionary exemption, it cannot be withheld from the public unless the agency also shows that disclosure will harm the interest protected by that exemption.").

### 1. There are no reasonably foreseeable commercial harms from releasing Form 300As.

Because Exemption 4 protects "trade secrets and commercial or financial information" that is "privileged or confidential," 5 U.S.C. § 552(b)(4), as well as "assurances about the treatment of . . . proprietary" information, *Argus Leader*, 139 S. Ct. at 2366, the foreseeable harm standard requires OSHA to demonstrate that disclosing Form 300As will foreseeably harm proprietary interests, "such as by causing 'genuine harm to [the submitter's] economic or business interests[.]" *Ctr. for Investigative Reporting v. U.S. Cust. and Border Protec.*, No. 1:18-cv-02901-BAH, 2019 WL 7372663, at *14 (D.D.C. Dec. 31, 2019). The government alleges that Exemption 4 is intended to protect information's confidentiality, Dkt. No. 25 at 29 (citing *ASBL*, 411 F. Supp. 3d 824, 836 (N.D. Cal. 2019)), but at least two federal courts have held that the relevant protected interest under Exemption 4 is a commercial one. *See Ctr. for Investigative Reporting*, No. 1:18-cv-02901-BAH, 2019 WL 7372663, at *14; *Ctr. for Investigative Reporting*, 4:19-CV-01843-KAW, 2019 WL 6716352, at *7.

-23-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

DOL's interpretation of the relevant protected interest "violates the cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988) (citations omitted). Under Defendant's interpretation, the foreseeable harm standard would cease to be an "independent and meaningful burden" as the FIA requires. *Nat. Resources Def. Council v. U.S. Env't Protection Agency*, 17-CV-5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019) (citations omitted). This is because *any* information deemed confidential under Exemption 4 would automatically satisfy the foreseeable harm standard, since disclosure necessarily destroys the confidentiality of information. The government's position is one that has been criticized as contrary to the text and spirit of the FIA, in addition to creating redundancy problems. *See* Al-Amyn Sumar, *Unpacking FOIA's "Foreseeable Harm" Standard*, 35 COMMS. LAW. 15, 20 (2020) ("Put simply, the foreseeable harm provision must be read as adding *something* to an agency's burden...") (emphasis in original) (Baranetsky Decl., Ex. 21). Nevertheless, as discussed below, DOL fails to describe any reasonably foreseeable harms.

### 2. There are no other reasonably foreseeable harms from releasing Form 300As.

The FIA requires that the government "*reasonably foresee* that disclosure would harm an interest protected by an exemption," 5 U.S.C. § 552(a)(8)(A) (emphasis added). DOL fails to properly allege that any resulting harms it claims will result from disclosure are reasonably foreseeable,[16] *see* Dkt. No. 25 at 28-29, because it does not meet an objective test. *See Kentucky v. King*, 563 U.S. 452, 464 (2011) ("Legal tests based on reasonableness are generally objective[.]").

The government's failure to meet this requirement likely stems from the fact that no Exemption 4 harms have objectively occurred or would be objectively reasonably foreseeable. First,

---

[16] Indeed, despite the fact that the standard codified in the FIA is referred to as the "foreseeable harm" standard by this Court, Congress, and the DOJ itself, *see Ecological Rights Found. v. Fed. Emerg. Mgmt. Agency*, 16-CV-05254-MEJ, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017) ; 114 Cong. Rec. S1495 (Mar. 15, 2016), https://www.congress.gov/114/crec/2016/03/15/CREC-2016-03-15-senate.pdf (statement of Sen. Grassley) (Baranetsky Decl., Ex. 22); Dep't of Justice, *President and the Attorney General Issue New FOIA Policy Memoranda*, Jan. 1, 1994, https://www.justice.gov/oip/blog/foia-update-litigation-review-yields-greater-disclosure (Baranetsky Decl., Ex. 23), the word "foreseeable" appears nowhere in Defendant's brief. *See generally* Dkt. No. 25.

-24-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

there are no proprietary interests in these non-commercial records.  *See supra* Section III.B.1.  Unlike "sales statistics" or "profits and losses," *Pub. Citizen v. FDA*, 704 F.2d at 1290, the OSHA Reports do not reveal anything about Amazon's commercial affairs.  Second, even if the harm *were* the loss of confidentiality, these records were explicitly meant to be published, so there could be no foreseeable harm as companies were prepared for that outcome.  Third, and most importantly, this information, including Amazon's OSHA 300As has already been repeatedly disclosed for years through FOIA and published online with no resulting harms.  OSHA, FOIA Report – Q4 2018 (2018), https://www.osha.gov/sites/default/files/incomingrequests_06012018_12312018.xlsx (Baranetsky Decl., Ex. 19); Michaels Decl. ¶ 7.  OSHA has failed to allege any objective, concrete harm,  and instead invoked only "boiler plate language," *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019), by simply stating that "disclosure destroys the private nature of the information."  Dkt. No. 25 at 29 (citing *ASBL*, 411 F. Supp. 3d at 836).  Where records have been previously disclosed with no resulting injury, DOL certainly fails to provide the necessary "link between this harm and the specific information contained in the material withheld," *Judicial Watch*, 375 F. Supp. 3d at 101.  Even under the government's strained interpretation of the foreseeable harm standard, its conclusory statements do not meet the requirements.  *Supra* Section III.B.2.

## IV.     CONCLUSION

For the foregoing reasons, the DOL's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

-25-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

1

2
DATED: April 27, 2020

Respectfully submitted,

3
*s/ D. Victoria Baranetsky*

4
D. Victoria Baranetsky
THE CENTER FOR INVESTIGATIVE REPORTING

5
1400 65th St., Suite 200
Emeryville, CA 94608

6
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28