D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR,<br><br>Defendant. | Case No. 3:19-cv-05603-SK<br><br>**DECLARATION OF PROFESSOR DEEPA VARADARAJAN IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT** |

I, DEEPA VARADARAJAN, declare:

1. I, Deepa Varadarajan, have personal knowledge of the matters stated in this declaration. If called upon to do so, I am competent to testify to all matters set forth herein.

2. I am an assistant professor of legal studies in the Department of Risk Management & Insurance at the J. Mack Robinson College of Business at Georgia State University with a secondary appointment at the George State University College of Law.

3. My research focuses on trade secrecy and intellectual property laws, and I have published several articles on these topics, including a forthcoming law review article about Exemption 4 after *Argus Leader*, which draws extensively on my trade secrecy research. In general, my scholarly work explores how intellectual property laws—and in particular, trade secret laws—create incentives for and pose risks to cumulative innovation.

4. I earned a Bachelor of Arts degree from the University of Texas Austin and earned my Juris Doctorate from the Yale Law School. Prior to coming to Georgia State University, I was an assistant professor of law at St. John's University School of Law and a Thomas C. Grey Law Fellow at Stanford Law School. Before becoming a professor, I worked as a litigation associate and completed two clerkships.

5. In my research, I explain how firms have invoked trade secret laws to apply to an increasingly wider array of subject matter in recent decades. Under modern statutes such as the Defend Trade Secrets Act (DTSA), almost any type of technical or business information can potentially fall within the definition of a trade secret. To obtain protection, a trade secret owner need not formally apply for protection nor register trade secrets with any federal or state agency.

6. Because of the relaxed standard described above, a firm's secrecy efforts and designations of confidentiality often drive the identification of trade secrets. Firms increasingly rely on trade secret protection to protect intangible assets, and consequently, there has been a significant increase in civil litigation rates for trade secrecy over the last several decades.

7. While most trade secret cases involve departing employee-defendants accused of violating confidentiality duties, in my research, I describe how some firms have invoked trade secrecy to avoid scrutiny by regulators or negative publicity by news media outlets—even when

VARADARAJAN DECL. IN SUPP. OF
OPP. & CROSS MOT. SUMM. J

the public has a significant interest in learning the relevant information, such as when it might reveal corporate wrongdoing or mismanagement of government resources. In these contexts, firms' assertions of trade secrecy over information like source code and vendor pricing data may not only impact the government's oversight function but also the public's oversight function—to understand government decision-making and hold the government accountable. While Exemption 4 was intended to enhance private sector information-sharing with the government, it was not meant to be a tool to shield government action and decision-making from public view.

8. In my research, I explain how the altered standard for confidentiality under *Argus Leader* tracks, in some ways, the modern evolution and expansion of trade secrecy. That is, in both contexts, FOIA Exemption 4 and civil trade secrecy law, strict definitional constraints on proprietary business secrets have largely been replaced by an analysis focusing on the non-public nature of information and a firm's secrecy customs. Yet the expanded standard for business secrecy in the context of FOIA Exemption 4 is particularly worrisome, not only because it directly implicates government accountability, but also because the procedural posture of FOIA requests lacks some of the inherent safeguards of civil trade secrecy litigation. For example, because civil trade secrecy litigation often involves employee defendants, a plaintiff's broad assertions of proprietary secrets typically will be limited by an employee's own "general knowledge, skill and expertise."

9. In my research, I describe how the likely effect of *Argus Leader* will be to render Exemption 4's narrower definition of "trade secrets" irrelevant. Also, FOIA's recognition of business secrecy may sweep even more broadly than its civil trade secret law counterpart for reasons such as those described above. These dynamics suggest the need for additional checks on submitters' assertions of confidentiality and agency deference to those assertions under FOIA.

10. In my research, I describe how policy-makers have, in recent years, demonstrated am increased willingness to reign in trade secrecy's definitional breadth through targeted, statutory safe-harbors. For example, the federal DTSA includes an explicit "whistle-blower" immunity provision. Similarly, in the realm of public health, commentators have argued that certain kinds of

pricing information for drugs and medical devices should be excluded from trade secret protection as a matter of sound public policy.

11. In my research, I explain how the absence of an "economic harm" requirement in the aftermath of *Argus Leader* will likely lead to increased withholding of information of questionable commercial character. Requiring a submitter to offer some articulation of economic harm stemming from the disclosure of requested information would likely be a step in the right direction in terms of policy and incentives.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct to the best of my knowledge and belief.

Executed April 23, 2020 in Atlanta, GA.

/s/ *Deepa Varadarajan*
Prof. Deepa Varadarajan